# EXHIBIT A

# BLUEWOLF

BLUE WOLF CAPITAL
ONE LIBERTY PLAZA, 52ND FLOOR
NEW YORK, NY 10006

T: 212 488 1340
F: 917 677 8233
WWW.BLUE-WOLF.COM

October 10, 2014

Art Doloresco
Chief Executive Officer
Florence Hospital at Anthem, LLC
4545 N. Hunt Highway
Florence, AZ 85132

Re: **Florence Hospital at Anthem – Letter of Intent**

Dear Mr. Doloresco:

We are pleased to submit this Letter of Intent ("**LOI**") outlining our proposal whereby an affiliate of Blue Wolf Capital Fund III, L.P. ("**Blue Wolf**") shall be designated by a court order acceptable to Blue Wolf as the "stalking horse" buyer of the assets of Florence Hospital at Anthem LLC (the "**Company**") under Section 363 ("**Section 363 Sale**") of Title 11 of the United States Code (Title 11 of the United States Code is referred to from time to time as the "**Bankruptcy Code**") (the "**Transaction**") in a bankruptcy case (the "**Bankruptcy Case**") commenced by the Company in the United States Bankruptcy Court for the District of Arizona (the "**Bankruptcy Court**"). Blue Wolf will participate in a Section 363 Sale only as a stalking horse buyer and will not participate in a Section 363 Sale as a bidder against an alternative stalking horse buyer. This LOI and the proposal contained here are intended to be a non-binding statement of the framework on which the parties agree to work toward mutually acceptable binding agreements and are not intended to set forth or establish binding obligations on either party.

1. *Proposal*

    Blue Wolf will acquire the right, title and interest in, to or under substantially all assets and properties (tangible and intangible) of the bankruptcy estate of the Company (other than the Excluded Assets described below) and will assume and take an assignment of certain executory contracts and leases as determined by Blue Wolf in its sole discretion (collectively the "**Assets**"), **for cash consideration of $5.0 million, to be paid at closing**. The $5.0 million cash consideration is the total consideration to be paid by Blue Wolf and, for the avoidance of doubt, is inclusive of consideration needed to cure monetary defaults on any executory contracts designated by Blue Wolf to be assumed by the Company and assigned to Blue Wolf at the closing and of employee costs of the Company for vacation, sick pay, holiday entitlements, personal and other paid time-off and similar items accrued and outstanding as of closing for employees of the Company hired by Blue Wolf at closing. At closing, title to the Assets shall be transferred to Blue Wolf free and clear of all liens, claims and encumbrances in accordance with, and with all of the protections afforded by the Bankruptcy Code, including, without limitation, those available under Bankruptcy Code Section 363. "**Excluded Assets**" means (i) cash and cash equivalents on hand at closing, (ii) any avoidance actions or other actions against any person or entity other than Blue Wolf, (iii) rights to recover and retain Medicare reimbursements and "meaningful use" funds in an amount not to exceed $1.0 million but only to the extent needed to fund any shortfalls existing to pay administrative claims, CKS commissions, contract cure costs, employee costs, unsecured creditor claims not to exceed $250,000 and up to $3.7 million to Bank SNB, NA (the "**Bank**") on account of its allowed secured claim, and (iv) any other assets of the Company that Blue Wolf elects, in its sole discretion, not to acquire, to be determined before entry of the Bid Procedure Order.



There is **no financing contingency** associated with this proposal. Blue Wolf will fund the entire purchase price from its fully committed limited partnership, Blue Wolf Capital Fund III, L.P., a $309 million private equity fund, which has substantial uncommitted capital available.

Blue Wolf's obligation to close the Transaction is subject to satisfaction of each of the following conditions or waiver of same by Blue Wolf:

1. Completion by Blue Wolf of its confirmatory business due diligence. Such due diligence must be acceptable to Blue Wolf in its sole discretion. Such confirmatory business due diligence will be completed no later than December 4, 2014 (the "**Due Diligence Period**");

2. The execution of an Asset Purchase Agreement (the "**Blue Wolf APA**") by the Company providing for the sale of the Assets by the Company to Blue Wolf with no financing or diligence contingencies following the bid deadline, in form and substance acceptable to Blue Wolf and the Company, including, without limitation, terms and conditions to be contained in the Blue Wolf APA consistent with those set forth herein. Blue Wolf will sign the Blue Wolf APA (subject to completions of the exhibits and schedules thereto) at the time of the entry of the Bid Procedure Order and the granting of the bid protections by the Bankruptcy Court as set forth in Paragraph 8 a and b below;

3. Re-negotiation of the existing lease agreement with MPT of Florence, LLC ("**MPT**") on terms and conditions acceptable to Blue Wolf in its sole discretion;

4. Attornment Agreement from Mortgagee (to the extent there is a Mortgagee) acceptable to Blue Wolf that if Mortgagee exercises remedies against the Mortgagor, Mortgagee will not cut off the Lease that Blue Wolf will have on the Property and that such Lease will continue in full force and effect with the Mortgagee or successor owner;

5. Negotiation of an employment agreement between Blue Wolf and Art Doloresco on terms acceptable to those parties;

6. To the extent that the IT transfer from Gilbert Hospital to Company is not completed by the Closing to the satisfaction of both the Company and Blue Wolf, there shall be an IT Hosting Services Agreement with Gilbert Hospital on terms and subject to conditions satisfactory to Blue Wolf in its sole discretion that the Company can assume and assign to Blue Wolf as an executory contract;

7. Intentionally omitted;

8. Entry of an order by the Bankruptcy Court satisfactory to Blue Wolf on or before October 15, 2014 (the "**Bid Procedure Order**") approving the marketing of the Assets for sale and the bidding procedure to implement the solicitation of overbids regarding the sale of the Assets, including but not limited to:

    a. Approval of bid protection for Blue Wolf as the stalking horse buyer in the form of an expense reimbursement to Blue Wolf in the amount of $175,000 (the "**Cost Reimbursement**"), payable to Blue Wolf on the conditions that Blue Wolf executes an

the Blue Wolf APA and is not the prevailing bidder due to an overbid. If the overbid is as a result of a cash bid at the Auction, then the Cost Reimbursement of $175,000 shall be paid to Blue Wolf from and as part of the closing and funding of proceeds to be paid by the prevailing bidder at such closing. If the overbid of a prevailing bidder at the auction includes, in whole or in part, a credit bid, then the Cost Reimbursement to Blue Wolf of $175,000 shall be timely made to Blue Wolf no later than at the closing of such sale or asset transfer through the payment of $175,000 from cash on hand to be held by the Company in a separate segregated account (the "**Cost Reimbursement Account**"). The Cost Reimbursement Account must be created and fully funded two (2) business days following the entry of the Bid Procedure Order. To the extent that the $175,000 in the Cost Reimbursement Account constitutes the Bank's cash collateral, the Bid Procedure Order shall provide that the Bank consents to the use of such funds to pay the Cost Reimbursement in the event that a credit bidder is the prevailing bidder. Further, the Cost Reimbursement to Blue Wolf is granted shall be granted as a super-priority administrative claim in the amount of $175,000 such that the Cost Reimbursement shall be paid to Blue Wolf from the Cost Reimbursement Account ahead of any other administrative claims but only in the event that the overbid of a prevailing bidder includes, in whole or in part, a credit bid.

b. There shall be no marketing period for overbids following commencement of the bidding process pursuant to the Bid Procedure Order. Any overbids, in order to be a qualified overbid, shall be accompanied by a form of asset purchase agreement that is for the Assets other than the Excluded Assets and is in substantially the same form as the Blue Wolf APA, marked to show differences from the Blue Wolf APA and containing an initial minimum overbid equal to or greater than the sum of (i) the Blue Wolf purchase price of $5 million, (ii) the Cost Reimbursement, and (iii) $100,000 (a "**Qualified Bid**").

c. The bidding process under the Bid Procedure Order will commence after Blue Wolf advises the Company that its confirmatory due diligence conducted during the exclusive period is satisfactory.

d. Determination of the highest and best bidder through an open cry auction to be held following the deadline for submission of overbids in which only Blue Wolf and any party submitting a Qualified Bid ("**Qualified Bidder**") may participate, with subsequent minimum incremental bids above the initial minimum overbid amount of at least $100,000 in cash.

9. An agreement with the Company on the form and content of the sale order to be submitted to the Court in the event Blue Wolf is the ultimate winning bidder for the Assets at the Auction (the "**Sale Order**"), which order must be acceptable in form and substance to Blue Wolf and its counsel in all respects, and must provide Blue Wolf with all of the protections of the Bankruptcy Code, including as a good faith purchaser under Bankruptcy Code Section 363(m) and which Sale Order may not be modified in any material respect without the express written consent of Blue Wolf;



10. The Sale Order shall be entered by the Bankruptcy Court on or before January 15, 2015, and such order shall (a) be immediately effective and enforceable, (b) waive any stay applicable to the Sale Approval Order pursuant to Federal Rule of Bankruptcy Procedure 6004(h), and (c) not be stayed by any court of competent jurisdiction, approving the sale of the Assets and the assumption and assignment of the assumed contracts to Blue Wolf upon the terms and conditions set forth in the Blue Wolf APA and otherwise in form and content satisfactory to Blue Wolf and its counsel;

11. Unless otherwise provided for herein, all terms and conditions concerning the Transaction shall be stated in the Blue Wolf APA and related agreements and documents that will be subject to the requisite approval of the Company and Blue Wolf, acting on advice of counsel and other advisors. If requested by Blue Wolf, all such agreements and documents shall be approved by the Bankruptcy Court at the time of entry of the Sale Order. Those terms and conditions will include representations, warranties and covenants that are usual and customary in a transaction of this nature and mutually acceptable to the parties involved in the sale of Assets of the Company. The parties shall finalize the form of the agreements and documents prior to the entry of the Bid Procedure Order;

12. The Transaction will be closed no later than two (2) business days after all conditions precedent to closing as may be set forth herein and in the Blue Wolf APA shall have been satisfied or waived by Blue Wolf (including, without limitation, entry of the Sale Order by the Bankruptcy Court on or before January 15, 2015) (the "**Closing Date**");

13. Blue Wolf shall have received such approvals, consents, waivers and extensions with respect to any outstanding performance or other surety bonds as it deems necessary and appropriate in its sole and absolute discretion one (1) business day prior to the date set by the Bankruptcy Court for over-bids in the Bid Procedure Order; and

14. Blue Wolf shall have received all governmental licenses, permits, registrations, approvals and authorizations as are required to conduct the business of the Company as conducted on the date hereof.

### 2. *Business Due Diligence*

Blue Wolf's confirmatory due diligence review will include but not be limited to: completing a Quality of Earnings review of the Company's historical financials; reviewing all contracts, assets and liabilities among other standard legal due diligence; regulatory review of the Company's industry and markets; confirming the cost of an insurance and benefits programs for the Company; and conducting confirmatory conversations with customers and management. The results of Blue Wolf's due diligence must be satisfactory to Blue Wolf in its sole discretion as one of the conditions to Blue Wolf's obligation to close and pay the purchase price for the Assets. Blue Wolf will provide notice to the Company in writing of whether its confirmatory due diligence is satisfactory to Blue Wolf by the end of the Due Diligence Period and no later than December 4, 2014. If Blue Wolf fails to give such confirmatory written notice that the due diligence is satisfactory, the Blue Wolf APA will automatically terminate without liability to Blue Wolf on December 4, 2014. If such due diligence is satisfactory, then the bidding process under the Bid Procedure Order can begin with Blue Wolf as the stalking horse bidder under the Blue Wolf APA. Blue Wolf will seek to understand or confirm the following (without limitation):



a. Recurring earnings, excluding the impact of non-recurring and/or extraordinary items;

b. Volume trends, quality trends, sources of patients, and referral relationships;

c. Key performance indicators used to manage the Company and the impact of each on performance;

d. The Company's reimbursement environment and payor mix, including any contracts in place;

e. The quality of the Company's accounts receivable, including reserves in place;

f. The Company's recent history of, and near-term projections for, required capital expenditures;

g. The financial impact of and capital required to execute on management's strategic initiatives;

h. The competitive landscape in which the Company operates;

i. All material contracts and key third-party relationships;

j. The services historically, currently, and prospectively provided by Gilbert Hospital, and the terms on which those services have been and will be provided;

k. Any threatened or pending litigation;

l. Transferability of licenses, contracts and approvals required to operate the Company;

m. The assets being acquired; and

n. The liabilities being assumed.

3. *Access to Information*

As promptly as possible after the execution of this LOI, the Company will provide to Blue Wolf and its business, legal and accounting representatives and advisors prompt access to the corporate, business, financial, accounting, tax, customer, supplier, and all other records and information relating to the Company as requested by Blue Wolf and will make available all such information and personnel as may reasonably be requested in connection therewith.

4. *Our Team*

The diligence team will include Michael Ranson (Partner), Andrew Schwartz (Vice President) and Jessica Chandnani (Associate) from Blue Wolf; a quality of earnings / accounting review conducted by a team from Cohn Reznik, or a similar firm; a regulatory and compliance review; a legal review led by Haynes & Boone, or a similar firm; a systems review led by West Monroe or a similar firm; an insurance and benefits review by Corporate Risk Solutions, LLC or a similar firm and a review, physical inspection and evaluation of physical assets by other professionals engaged by Blue Wolf.

5. *LOI and its Proposal are not Binding*

This LOI and the proposal contained in this LOI are not a binding commitment by Blue Wolf, cannot be enforced against it, and are subject to completion of confirmatory due diligence satisfactory to Blue Wolf. The Blue Wolf APA will be executed upon entry of the Bid Procedure Order. The Blue Wolf APA will automatically terminate unless Blue Wolf gives written notice to the Company not later than December 4, 2014 that it is satisfied with its confirmatory due diligence. The Blue Wolf APA will be binding on Blue Wolf and will supersede this LOI. This LOI is intended to be a non-binding statement



of the framework on which the parties agree to work toward mutually acceptable binding agreements, and is not intended to set forth binding obligations on either party. Time is of the essence of this LOI and the obligations of the parties hereunder.

6. *Exclusivity and Access*

   Commencing on the execution of this LOI by Blue Wolf and the Company and ending at the end of the Due Diligence Period, the Company shall work with Blue Wolf on an exclusive basis to finalize the Blue Wolf APA and other documents evidencing the Transaction (the "**Exclusivity Period**"). During the Due Diligence Period, you and the Company agree to direct and cause all of its officers, directors, employees, affiliates, investment bankers, consultants and other agents and advisors (collectively, the "**Representatives**") not to, directly or indirectly, enter into any agreement with, any other corporation, firm or person, for the merger, consolidation or business combination or purchase, sale, transfer, encumbrance or disposition of all or substantially all of the Company securities, claims, assets or operations (other than as adequate protection of the senior lender's pre-petition claims and a carve-out for professional fees in the Chapter 11 case). Notwithstanding the foregoing, you and the Company and its Representatives will be free to provide due diligence and other information to third parties requesting the same during the Due Diligence Period, but you and the Company and its Representatives shall not solicit, negotiate, and/or entertain other proposals to enter into any agreements during the Due Diligence Period for another corporation, firm or person to become the stalking horse bidder or usurp, replace or substitute Blue Wolf's affiliate as the stalking horse bidder in any respect.

7. *Lender Right to Credit Bid*

   Unless such rights are otherwise altered by an order of this Court, the Bank shall be entitled to credit bid its claim as allowed by the Court. No other creditor holding a claim allegedly secured by any of the Company's assets to be purchased by Blue Wolf under the Blue Wolf APA shall be entitled to credit bid. The Company has represented that there are no other claims that total more than $30,000 in the aggregate allegedly secured by liens or security interests on assets to be purchased with respect to which the secured lender has a right to credit bid.

*[Remainder of page left blank intentionally]*



### 8. Contacts & Follow-Up

We appreciate the opportunity to submit this proposal and believe that we would be ideal partners for Florence Hospital at Anthem. If you have questions regarding our proposal, please contact Michael Ranson at 212.488.1344 or Andrew Schwartz at 212.488.1346.

Sincerely,

**Blue Wolf Capital Fund III, L.P.**

By: Blue Wolf Capital Advisors, L.P.
Its: General Partner

By: Blue Wolf Capital Advisors, LLC
Its: General Partner

By: _____
Michael Ranson, Partner

**AGREED AND ACCEPTED:**

FLORENCE HOSPITAL AT ANTHEM LLC

By: _____

Its: _____

Date: _____