Daniel E. Garrison (Bar No. 021495)
Jessica Kenney Bonteque (Bar No. 026615)
**ANDANTE LAW GROUP, PLLC**
Scottsdale Financial Center I
4110 North Scottsdale Road, Suite 330
Scottsdale, AZ 85251
Telephone: (480) 421-9449
Email: dan@andantelaw.com
Email: jessica@andantelaw.com
*Attorneys for Gilbert Hospital, LLC*

Bryce A. Suzuki, Esq. (Bar No. 022721)
Kyle S. Hirsch, Esq. (Bar No. 024155)
**BRYAN CAVE LLP**
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
Telephone: (602) 364-7000
Email: bryce.suzuki@bryancave.com
Email: kyle.hirsch@bryancave.com
*Attorneys for Bank SNB*

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In Re:** | **Chapter 11** |
| **FLORENCE HOSPITAL AT ANTHEM, LLC,** | **Case No.: 4:13-bk-03201-BMW** |
| **Debtor.** | |

## AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION FOR GILBERT HOSPITAL, LLC AND FLORENCE HOSPITAL AT ANTHEM, LLC PROPOSED BY GILBERT HOSPITAL, LLC AND BANK SNB DATED MARCH 11, 2015

# TABLE OF CONTENTS

| | |
|---|---|
| I. Introduction | 5 |
|   A. Plan Proponents | 5 |
|   B. Summary of Plan | 5 |
| II. Special terms and Names | 7 |
|   A. Defined Terms | 7 |
| III. Classification of Claims and Interests | 17 |
|   A. Priority Claims (Class 1—but not formally classified) | 17 |
|     1. Class 1.01—Administrative Claims | 17 |
|     2. Class 1.02—Wage Claims | 17 |
|     3. Class 1.03—Plan Benefit Claims | 17 |
|     4. Class 1.04—Priority Tax Claims | 17 |
|   B. Secured Claims (Class 2) | 18 |
|     1. Class 2.01.A—FHA Bank SNB Debt and LOC Claim | 18 |
|     2. Class 2.02.B—GH Bank SNB Claim | 18 |
|     3. Class 2.03.A—FHA Pinal County, Arizona Claim | 18 |
|     4. Class 2.04.B—GH Maricopa County, Arizona Claim | 18 |
|     5. Class 2.05.A—FHA Covidien-Mallinckrodt Claim | 18 |
|     6. Class 2.06.A—FHA Johns Claim | 18 |
|     7. Class 2.07.B—GH Iron Mountain Claim | 18 |
|   C. General Unsecured Claims (Class 3) | 18 |
|     1. Class 3.01.A—Unsecured Claims against FHA | 18 |
|     2. Class 3.02.B—Unsecured Claims against GH | 18 |
|   D. Membership Interests (Class 4) | 18 |
|     1. Class 4.01.A—Membership Interests to FHA | 18 |
|     2. Class 4.02.B—Membership Interests in GH | 18 |
| IV. Treatment of Classified Claims and Interests | 18 |
|   A. Priority Claims (Class 1—but not formally classified) | 19 |
|     1. Class 1.01—Administrative Claims | 19 |
|     2. Class 1.02—Wage Claims | 19 |
|     3. Class 1.03—Plan Benefit Claims | 20 |
|     4. Class 1.04—Priority Tax Claims | 22 |
|   B. Secured Claims | 22 |
|     1. Class 2.01.A—FHA Bank SNB and LOC Claim | 22 |
|     2. Class 2.02.B—GH Bank SNB Claim | 23 |
|     3. Class 2.03.A—Pinal County, Arizona Claim | 24 |
|     4. Class 2.04.B—GH Maricopa County, Arizona Claim | 24 |
|     5. Class 2.05.A—FHA Covidien-Mallinckrodt Claim | 24 |
|     6. Class 2.06.A—FHA Johns Claim | 25 |
|     7. Class 2.07.B—GH Iron Mountain Claim | 25 |
|   C. General Unsecured Claims (Class 3) | 25 |
|     1. Class 3.01.A—General Unsecured Claims against FHA | 25 |
|     2. Class 3.02.B—General Unsecured Claims against GH | 25 |
|   D. Equity Interest (Class 4) | 26 |
|     1. Class 4.01.A—Membership Interests in FHA | 26 |

| | |
|---|---|
|     2. Class 4.02.B—Membership Interests in GH | 26 |
| V. Implementation of the Amended Joint Plan | 26 |
|   A. Restructuring of FHA and GH | 26 |
|     1. Creation of Holding Company | 26 |
|     2. Holdco Corporate Governance | 26 |
|     3. Reorganized Debtors' Management | 27 |
|     4. Cancellation of Existing Membership Interests and Issuance of New Membership Interests | 27 |
|     5. Senior Management Equity Pool and Employment Contracts | 28 |
|     6. Tax Distributions | 28 |
|   B. Impact of the Settlement of the GH Lawsuits | 28 |
|   C. Interdebtor Claims | 29 |
|   D. Operation of Holdco and the Reorganized Debtors During the Term of the Amended Joint Plan | 29 |
|     1. Operation of the Business of the Reorganized Debtors | 29 |
|     2. Maintenance of Separate Financial Statements | 29 |
|     3. Establishment, Maintenance, and Increase of Reserves | 29 |
|   E. Settlement and Compromise of GH Claims against Bank SNB and Consolidation and Restructuring of Bank SNB Claims | 30 |
|     1. Consolidation and Cross-Collateralization of Bank SNB Claims | 30 |
|     2. Resolution of GH/Bank SNB Disputes | 31 |
|     3. Restructuring Terms and Plan Treatment | 32 |
|     4. New Revolving Line of Credit | 33 |
|   F. Funding for the Amended Joint Plan | 33 |
|     1. Operational Cash Flows and Distributable Cash | 34 |
|     2. Swept Funds | 34 |
|     3. Assets of the GH 409(a) Plans | 34 |
|     4. New Value Election | 34 |
|     5. Distributable Real Estate Proceeds | 35 |
|     6. Distributable Net Refinancing Proceeds | 35 |
|     7. Distributable Proceeds of GH Retained Causes of Action | 35 |
|     8. Enterprise Liquidation Proceeds | 35 |
|   G. Establishment of the FHA Liquidating Trust | 36 |
|   H. Appointment of Plan Agent | 37 |
|   I. Consummation of the Amended Joint Plan | 38 |
| VI. Claims | 38 |
|   A. Objections and Deadlines | 38 |
|   B. Settlement of Claims | 38 |
|   C. Calculation and Payment of Pro Rata Distributions | 39 |
|   D. Penalties and Fines | 39 |
|   E. Leases and Executory Contracts | 39 |
| VII. Other Provisions | 40 |
|   A. Conditions Precedent to Effective Date | 40 |
|   B. Retention of Jurisdiction | 41 |
|     1. Claims Determination | 41 |
|     2. Estate Assets | 41 |

| | | |
|---|---|---|
| | 3. Executory Contracts | 41 |
| | 4. Unliquidated Claims | 41 |
| | 5. Plan Corrections | 42 |
| | 6. Plan Modifications | 42 |
| | 7. Adversary Proceedings | 42 |
| | 8. Plan Interpretation | 42 |
| | 9. Deadlines | 42 |
| | 10. Enforcement of Discharge; Other Injunctive Relief | 42 |
| | 11. Additional Matters | 42 |
| | 12. Case Closing | 42 |
| C. | Modification of the Plan | 43 |
| D. | Conditions to Confirmation and Occurrence of the Effective Date | 43 |
| | 1. Confirmation | 43 |
| | 2. Effective Date | 43 |
| E. | Effect of Confirmation | 43 |
| | 1. Discharge of Claims | 43 |
| | 2. Vesting of Assets in the Reorganized Debtors | 43 |
| | 3. Plan-Based Injunction | 44 |
| | 4. Exculpation of Plan Proponents and Others | 44 |
| F. | Releases | 44 |
| | 1. Debtors' Release of Bank SNB | 44 |
| | 2. Bank SNB's Release of Debtors | 44 |
| G. | Miscellaneous | 45 |
| | 1. Time of the Essence | 45 |
| | 2. Headings | 45 |
| | 3. Exemption from Transfer Taxes | 45 |
| | 4. Notices | 45 |
| | 5. Confirmation without Acceptance of all Classes | 46 |

# I.    INTRODUCTION

The following introduction presents a summary of the significant provisions and intent of this Amended Joint Plan.  It is intended as a summary only, and is not intended nor shall it be construed to affect the interpretation or effect of the operative provisions of the Amended Joint Plan.  Accordingly, interested parties are strongly encouraged to read the Amended Joint Plan and its accompanying Amended Joint DS, including all exhibits, in their entirety.  Many capitalized terms are defined in section II of this Amended Joint Plan.

This Amended Joint Plan is filed in both the FHA Bankruptcy and the GH Bankruptcy and will restructure both entities.

## A.    Plan Proponents

The proponents of the Amended Joint Plan are Gilbert Hospital, LCC and Bank SNB, an Oklahoma state banking corporation, successor by conversion to Bank SNB, National Association, formerly known as Stillwater National Bank and Trust.   In the FHA Bankruptcy, the Plan Proponents are two of FHA's largest creditors.  FHA no longer has the exclusive right to file a plan in the FHA Bankruptcy, and therefore, the Amended Joint Plan will proceed as a creditors' plan in that case.

In the GH Bankruptcy, GH is the debtor and debtor-in-possession and maintains the exclusive right to file and solicit acceptances of a plan of reorganization until December 2, 2014 and February 2, 2015, respectively.

## B.    Summary of Plan

By this Amended Joint Plan, GH and Bank SNB propose: 1) to create a new holding company structure to own GH, with the current members of GH receiving membership interests in the new holding company; 2) to acquire ownership of FHA through the new holding company, cancelling its existing membership interests; 3) to fund a recovery to the holders of administrative claims and unsecured claims against FHA, waiving GH's right to participate in either recovery and resolving all inter-debtor claims; 4) to resolve certain claims that GH believes exist against its senior, secured lender, Bank SNB, and in connection with the resolution of such claims, to restructure the direct indebtedness that it owes Bank SNB and GH's guaranty of the debt that FHA owes to Bank SNB; 5) to commit a substantial portion of going-forward income to the repayment in full of the unsecured creditors of GH; and 6) to provide a return to the unsecured creditors of FHA from the proceeds of a liquidating trust.

As part of this overall restructuring of the bankruptcy estates of FHA and GH, the current members of FHA will be offered the opportunity to subscribe to a portion of the new membership interests to be issued in Reorganized FHA, the proceeds of which will be used to help fund this Amended Joint Plan.  Finally, the corporate governance structure of the new holding company will be established, resolving a difficult history of conflict over the management of both FHA and GH, and thereby providing a more certain and reliable governance and operational structure for the future performance of this Amended Joint Plan and the Reorganized Debtors.

Funding for the Amended Joint Plan will come from at least two, and potentially up to seven, sources. <u>First</u>, the Amended Joint Plan will be funded by excess cash flows from the operation of the hospitals owned by each Debtor. During the pendency of GH's bankruptcy case, it has operated profitably and accumulated some cash reserves; and it is anticipated that the joint operations of the Reorganized Debtors will continue to generate excess cash flows that also will be used to fund the Amended Joint Plan. <u>Second</u>, GH will use the cash values of life insurance policies held by two non-qualified deferred compensation plans that it has sponsored for highly compensated employees under Section 409(a) of the Internal Revenue Code. FHA also sponsored a non-qualified deferred compensation plan under Section 409(a) of the Internal Revenue Code that holds life insurance policies that have cash value, which will upon Confirmation of this Amended Joint Plan vest in a liquidating trust established for the unsecured creditors of FHA. The assets of these deferred compensation plans are legally subject to the claims of general creditors of the respective Debtors, and the participants in these compensation plans will be repaid (in full as to GH, and *pro rata* as to FHA) as unsecured creditors under the Amended Joint Plan. <u>Third</u>, pursuant to the overall settlement and restructuring with Bank SNB, GH will have returned to it approximately $1.08 million swept by Bank SNB from the hospital's deposit accounts in the few days preceding GH's filing for Chapter 11 protection, and this returned cash can be used to fund the Amended Joint Plan, subject to the conditions contained in the GH/Bank SNB Compromise. <u>Fourth</u>, any proceeds obtained from the FHA new-membership subscription process will be used to fund the Amended Joint Plan. <u>Fifth</u>, if necessary, GH will liquidate certain real estate assets that it holds and use the proceeds of such sales to fund the Amended Joint Plan, including the potential sale of certain real property adjacent to Gilbert Hospital that Bank SNB will grant GH an option to purchase at an established price. <u>Sixth</u>, it is possible that GH will be able to obtain net proceeds from refinancing its debt to Bank SNB, which must occur no later than the fourth anniversary of the Effective Date of the Amended Joint Plan, and if net proceeds are available, they will be used to fund the Amended Joint Plan. <u>Seventh</u>, and finally, it is possible that having restructured the finances of FHA and GH under this Amended Joint Plan, and after the Reorganized Debtors have been operated successfully during the term of this Amended Joint Plan, one or both hospitals could be sold on favorable terms, and the proceeds of such sale(s) would be used to satisfy the balance of claims owed to the creditors of GH and return equity investments to the GH's members, as modified by the Amended Joint Plan.

As set forth in the accompanying Amended Joint DS, GH believes that this Amended Joint Plan is in the best interest of the creditors and interest holders of both GH and FHA. More particularly, GH believes that this Amended Joint Plan represents the best, and perhaps only, opportunity for the creditors of FHA to recover anything of value. GH also believes that if FHA were liquidated, or sold through the pending sale process proposed in the FHA Bankruptcy, the proceeds would be insufficient to satisfy FHA's debt to Bank SNB (potentially leaving little to nothing to pay FHA's unsecured creditors), resulting in Bank SNB's asserting a significant claim under GH's guaranty of that debt. GH believes that incurring that deficiency liability without also acquiring the revenue-generating potential of FHA's operations would threaten the ability of GH's creditors to be repaid in full, let alone in a reasonable period of time. Thus, the Amended Joint Plan presents an opportunity for the creditors and willing members of FHA to recover some portion of their claims and investments, and it maximizes GH's ability to pay its creditors in full in as short a time as possible—and also preserve a likely recovery of invested capital to its members.

## II. SPECIAL TERMS AND NAMES

The Amended Joint Plan, the Amended Joint DS accompanying the Amended Joint Plan, and exhibits to the Amended Joint DS employ certain words and phrases with specific meanings and identify various persons and entities by specific names.

### A. Defined Terms

The following definitions apply to this Amended Joint Plan, and any other capitalized terms used in this Amended Joint Plan that are not specifically defined herein shall have the meaning ascribed to them in the Bankruptcy Code and Bankruptcy Rules:

**1. Adjacent Property:** This term shall mean an approximately 15-acre parcel of real property adjacent to the GH Hospital Property, on which Bank SNB was granted a lien secured by a Deed Of Trust, Assignment Of Rents, Security Agreement, Fixture Filing And Financing Statement, which was recorded in the office of the Maricopa County Recorder at Recording Number 2007-1214970.

**2. Administrative Claim**: Every cost or expense of administration in the FHA Bankruptcy or the GH Bankruptcy, as applicable, including, but not limited to, any actual and necessary expenses of preserving or disposing of the assets of the FHA Estate or the GH Estate, any actual and necessary expenses incurred in operating the applicable Debtor's business post-petition, any professional fees and costs approved by the Bankruptcy Court, all Claims approved under § 507(a)(2) of the Bankruptcy Code, and any fees or charges assessed under 28 U.S.C. § 1930, in each case arising on or prior to the Effective Date.

**3. Allowed:** This term shall mean, with respect to a Claim or Interest, that the Claim or Interest has been determined to be, or is expressly declared in this Amended Joint Plan to be, an Allowed Administrative Claim, an Allowed Claim, or an Allowed Interest.

**4. Allowed Administrative Claim:** Allowed Administrative Claim shall mean an Administrative Claim:

(a) with respect to which a request for payment or an application for professional compensation has been filed with the Bankruptcy Court within the applicable period of limitation fixed by any Order of the Bankruptcy Court setting a deadline, and to which no objection to the allowance of the Administrative Claim has been filed by a Debtor or any other party or as to which any such objection has been determined by a Final Order, or

(b) for goods or services provided to a Debtor in the ordinary course of business after the FHA Petition Date or the GH Petition Date, as applicable, and on or prior to the Effective Date; *provided, however*, that nothing in this Amended Joint Plan shall deprive the Debtors or the Reorganized Debtors of the benefits of any defense to payment of such an Administrative Claim under any agreement governing, instrument evidencing, or other document relating to an Allowed Administrative Claim or under applicable non-bankruptcy law.

**5. Allowed Claim:** Allowed Claim shall mean a Claim:

(a) with respect to which a proof of claim has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3003 or by any Order of the

Bankruptcy Court setting a bar date, and to which no objection to the allowance of the Claim has been filed by a Debtor or any other party or as to which any such objection has been determined by a Final Order, or

(b) which is scheduled in the FHA Schedules or the GH Schedules, as applicable, and not listed as disputed, contingent or unliquidated.

An Allowed Claim shall not include unmatured or post-petition interest, penalties, fees or costs, unless specifically stated in the Amended Joint Plan. A Claim shall be Allowed only for the amount of money or money's worth actually paid or provided to a Debtor, plus any interest allowed by the Bankruptcy Court or agreed upon by the Debtor. Notwithstanding § 502(a) of the Bankruptcy Code and Bankruptcy Rules 3001 and 3003, for the purposes of the Amended Joint Plan, a Claim shall not be an Allowed Claim unless it satisfies the definition of Allowed Claim under this Amended Joint Plan.

**6.** **Allowed Interest:** An Interest in a Debtor held by a Person, as of the Effective Date, and as to which (a) such Interest was listed in the FHA Schedules or the GH Schedules, as applicable, and no objection has been made within the time allowed for the making of objections, (b) a Final Order has been entered allowing such Interest, or (c) a timely and proper proof of interest has been filed, and as to which no objection to the allowance of the Interest has been filed by the Debtor or any other party, or as to which any such objection has been determined by a Final Order.

**7.** **Amended Joint DS**: The Amended Joint Disclosure Statement relating to this Amended Joint Plan, and any amendments and supplements thereto as approved by an order of the Bankruptcy Court.

**8.** **Amended Joint Plan**: This Amended Joint Plan of Reorganization and any amendments or supplements hereto.

**9.** **Bankruptcy Code:** 11 U.S.C. §§ 101, *et seq.*

**10.** **Bankruptcy Court**: The United States Bankruptcy Court for the District of Arizona or any other court which may have jurisdiction over this case or any proceeding arising under, in, or relating to this case.

**11.** **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure in effect as of the Petition Date.

**12.** **Bank SNB:** This term shall mean Bank SNB, an Oklahoma state banking corporation, successor by conversion to Bank SNB, National Association, formerly known as Stillwater National Bank and Trust Company.

**13.** **Chapter 11**: Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101, *et seq.*

**14.** **Claim**: (a) A right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured, which right arose or accrued prior to the Confirmation Date; (b) a

right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured, where such right arose or accrued prior to Confirmation; or (c) a right to payment arising under 11 U.S.C. § 502(g).

15. **Claimant or Creditor**: Any person or entity that asserts a Claim.

16. **Confirmation**: The signing by the Court of the Confirmation Order.

17. **Confirmation Date**: The date upon which the Confirmation Order is entered upon the Bankruptcy Court's docket.

18. **Confirmation Order**: The Order signed by the Bankruptcy Court pursuant to 11 U.S.C. § 1129 confirming this Amended Joint Plan.

19. **Contingent Claim**: Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) which was not filed in a sum certain, or which has not accrued and is dependent on a future event that has not occurred and may never occur, and (b) which has not been allowed on or before the Confirmation Date.

20. **Contracts:** Shall have the meanings provided in section IV.E, below.

21. **Court**: The Bankruptcy Court.

22. **Covidien**: Covidien-Mallinckrodt, a secured creditor of FHA.

23. **Covidien Collateral**: That certain Optivantage Injector complete start-up kit with all accessories, serial no. CI1211B535.

24. **Cure Payment**: This term shall mean any payment required under 11 U.S.C. § 365 to assume an executory contact or unexpired lease.

25. **Debtor or Debtors**: Refers, individually or collectively, to GH and/or FHA.

26. **Disputed Claim**: A Claim that the Debtor listed as unliquidated, disputed, or contingent in the FHA Schedules or the GH Schedules, as applicable, or to which an objection has been filed which has not been resolved by a Final Order.

27. **Distributable Cash**: This term has the meaning given to it in section V.F below.

28. **Distributable Net Refinancing Proceeds**: This term has the meaning given to it in section V.F below.

29. **Distributable Real Estate Proceeds**: This term has the meaning given to it in section V.F below.

30. **Distributable Proceeds of GH Retained Causes of Action**: This term has the

meaning given to it in section V.F below.

31. **Dr. Johns:** This term shall mean Dr. Timothy Johns, the founder of both GH and FHA.

32. **Effective Date**: The first business day that is at least 30 days after the Confirmation Date and on which all conditions to the effectiveness of the Amended Joint Plan have been satisfied.

33. **Effective Date Contract Notice:** Shall have the meanings provided in section IV.E, below.

34. **Enterprise Liquidation Proceeds**: This term has the meaning given to it in section V.F below.

35. **Excluded Assets**: This term shall mean any asset of FHA or the FHA Estate that GH, at its election and in its sole discretion, shall identify prior to Confirmation of this Amended Joint Plan that it wishes to vest by operation of the Confirmation Order in the FHA Liquidating Trust instead of in Reorganized FHA.

36. **FHA:** Florence Hospital at Anthem, LLC, an Arizona limited liability company.

37. **FHA 409(a) Claim:** This term shall mean a Claim for benefits under the FHA 409(a) Plan that arises from a qualifying event occurring after the FHA Petition Date.

38. **FHA 409(a) Plan**: This term shall mean the deferred compensation plan sponsored by FHA under Section 409(a) of the Internal Revenue Code.

39. **FHA 409(a) Plan Proceeds**: This term shall mean the cash value of the FHA 409(a) Plan.

40. **FHA Bankruptcy**: This term shall mean the bankruptcy case filed by FHA in the Bankruptcy Court and assigned Case No. 4:13-bk-03201-BMW.

41. **FHA Beneficiaries:** This term shall mean any and all beneficiaries under the FHA Trust Agreement.

42. **FHA Committee**: The Official Committee of Unsecured Creditors formed in the FHA Bankruptcy.

43. **FHA DE**: This term refers to an entry on the docket of the FHA Bankruptcy.

44. **FHA Estate**: The FHA bankruptcy estate created by the filing of the FHA Petition as identified and described in § 541 of the Bankruptcy Code.

45. **FHA Guarantors:** This term shall mean all individuals or entities that have guarantied any debt of FHA, except GH.

**46.** **FHA Healthcare Claims**: This term shall mean any Claim to reimbursement for health benefits approved by the FHA TPA.

**47.** **FHA Hospital**: The 36-bed, 96,000 square-foot general acute hospital located at 4545 North Hunt Highway in Florence, Arizona.

**48.** **FHA Hospital Property**: This term shall mean the hospital facility located at 4545 North Hunt Highway in Florence, Arizona.

**49.** **FHA Liquidating Trust**: This term shall mean the trust instrument created by Holdco to hold the FHA Trust Assets for the benefit of the FHA Beneficiaries.

**50.** **FHA Liquidating Trustee:** This term shall mean the trustee of the FHA Liquidating Trust.

**51.** **FHA MPT**: This term shall mean MPT of Florence, LLC, the counterparty to the MPT FHA Lease.

**52.** **FHA Petition**: The original voluntary petition for relief filed by the Debtor under Chapter 11.

**53.** **FHA Petition Date**: The date on which the FHA Petition was filed: March 6, 2013.

**54.** **FHA Professionals**: The term FHA Professionals shall refer to FHA's attorneys, accountants, ombudsmen, or other professionals approved by the Bankruptcy Court pursuant to §§ 327 through 333 of the Bankruptcy Code.

**55.** **FHA PTO Claims:** This term shall mean any Claims for paid time off benefits by either current or former GH employees.

**56.** **FHA Retained Causes of Action:** This term shall mean any claim, cause of action or right in action, chose in action or suit, the essential elements of which occurred, arose, or accrued prior to the FHA Petition Date in favor of FHA, and any claim, cause of action or right in action, chose in action or suit, that was created under the terms of the Bankruptcy Code, in favor of FHA, including but not limited to avoidance actions, preference claims, and fraudulent conveyance claims, with the exception of any cause of action FHA may have against GH or Bank SNB.

**57.** **FHA Schedules or Schedules and Statements**: The Schedules of Assets and Liabilities and Statement of Financial Affairs, and any amendments thereto, filed by FHA in the FHA Bankruptcy.

**58.** **FHA SNB Debt**: This term shall mean the Claims held by Bank SNB directly against FHA, excluding the LOC Claim.

**59.** **FHA Trust Agreement:** This term shall mean the trust instrument that creates the FHA Liquidating Trust.

**60.     FHA Trust Assets:** This term shall mean the following assets that will vest in the FHA Liquidating Trust: 1) the FHA Unsecured Claim Fund, 2) the proceeds of any Excluded Assets, 3) the proceeds of any FHA Retained Causes of Action, and 4) the FHA 409(a) Proceeds.

**61.     FHA TPA:** This term shall mean the third-party administrator hired to administer FHA's self-funded healthcare benefits program.

**62.     FHA Unsecured Claim Fund:** This term shall mean the $250,000 in cash to be paid by GH to the FHA Liquidating Trust on the Effective Date for the benefit of the FHA Beneficiaries.

**63.     Final Order**: An order or judgment of the Bankruptcy Court as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have expired or been waived in writing in form and substance satisfactory to the applicable Debtor or Reorganized Debtor or, in the event that an appeal, writ of *certiorari*, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, reargument, or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari,* or move for reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order not to be a Final Order.

**64.     Foreclosure Dispute**: This term shall mean the dispute between GH and Bank SNB regarding the validity of the pre-GH Petition Date foreclosure of the deed of trust secured by the Adjacent Property.

**65.     General Unsecured Claim:** Any Claim that is not a Secured Claim, Administrative Claim, or Priority Claim.

**66.     GH:** Gilbert Hospital, LLC, an Arizona limited liability company.

**67.     GH-41:** This term shall mean GH-41, LLC, a wholly-owned subsidiary of GH.

**68.     GH 409(a) Claim:** This term shall mean a Claim for benefits under either of the GH 409(a) Plans that arises from a qualifying event occurring after the GH Petition Date.

**69.     GH 409(a) Plans**: This term shall mean the two deferred compensation plans sponsored by GH under Section 409(a) of the Internal Revenue Code.

**70.     GH 409(a) Proceeds**: This term shall mean the cash value of the assets held in the GH 409(a) Plans.

**71.     GH Bankruptcy**: This term shall mean the bankruptcy case filed by GH in the Bankruptcy Court and assigned Case No. 4:14-bk-01451-MCW.

**72.** **GH Committee**: The Official Committee of Unsecured Creditors formed in the GH case.

**73.** **GH DE**: This term shall refer to an entry on the docket of the GH Bankruptcy.

**74.** **GH Direct Indebtedness**: This term shall mean the Claim held by Bank SNB against GH, excluding the GH Guaranty.

**75.** **GH Estate**: The GH bankruptcy estate created by the filing of the GH Petition as identified and described in § 541 of the Bankruptcy Code.

**76.** **GH Guaranty**: This term shall mean the Claim held by Bank SNB against GH arising from GH's guaranty of the FHA SNB Debt.

**77.** **GH Healthcare Claims:** This term shall mean any Claim to reimbursement for healthcare benefits approved by the GH TPA.

**78.** **GH Hospital:** This term shall mean the 19-bed general acute hospital located at 5656 South Power Road, Gilbert, Arizona 85295.

**79.** **GH Hospital Property:** This term shall mean the hospital facility located at 5656 South Power Road, Gilbert, Arizona 85295.

**80.** **GH MPT:** This term shall mean MPT of Gilbert, LLC, the counterparty to the MPT GH Lease.

**81.** **GH Petition**: The original voluntary petition for relief filed by the Debtor under Chapter 11.

**82.** **GH Petition Date**: The date on which the GH Petition was filed: February 5, 2014.

**83.** **GH Professionals**: The term GH Professionals shall refer to GH's attorneys, accountants, ombudsmen, or other professionals approved by the Bankruptcy Court pursuant to §§ 327 through 333 of the Bankruptcy Code.

**84.** **GH PTO Claims:** This term shall mean any Claims for paid time off benefits by either current or former GH employees.

**85.** **GH Retained Causes of Action**: This term shall mean any claim, cause of action or right in action, chose in action or suit, the essential elements of which occurred, arose, of accrued prior to the GH Petition Date in favor of GH, any claim, cause of action or right in action, chose in action or suit, that was created under the terms of the Bankruptcy Code, in favor of GH, including but not limited to the avoidance actions, preference claims, and fraudulent conveyance claims, with the exception of any cause of action GH may have against Bank SNB.

**86.** **GH Schedules or Schedules and Statements**: The Schedules of Assets and Liabilities and Statement of Financial Affairs, and any amendments thereto, filed by GH in the GH

Bankruptcy.

87. **GH/Bank SNB Compromise**: This term shall mean the agreed resolution of the Plan Proponents of the GH/Bank SNB Disputes, as described in section V.E below.

88. **GH/Bank SNB Disputes:** This term shall mean the three (3) areas of dispute that GH and Bank SNB identified during the GH Bankruptcy: 1) the Guaranty Disputes; 2) the Foreclosure Dispute; and 3) the Sweep Dispute.

89. **GH TPA:** This term shall mean the third-party administrator hired to administer GH's self-funded healthcare benefits program.

90. **Guaranty Disputes:** This term shall mean the claims asserted by GH pursuant to 11 U.S.C. §§ 544 and 548 that the GH Guaranty, in whole or part, may be avoidable as a fraudulent transfer. GH further asserts that the GH Guaranty may be unsecured in nature. Bank SNB disagrees.

91. **Holdco:** This term shall mean an Arizona limited liability company created through this Amended Joint Plan, the initial assets of which shall be 100% of the newly issued membership interests in Reorganized GH and no less than 90% of the newly issued membership interests in Reorganized FHA.

92. **Insider**: A Person within the definition contained at § 101(31) of the Bankruptcy Code.

93. **Interest**: Any equity interest in either of the Debtors.

94. **Interest Holder**: Any Person owning an Interest in a Debtor.

95. **Intercreditor Agreement**: The *Intercreditor Agreement* between FHA MPT and Bank SNB dated March 5, 2012.

96. **LOC Claim**: This term shall mean the Contingent Claim in the amount of $1,200,000, plus additional interest, fees, expenses, and other charges, held by Bank SNB against FHA, related to a standby letter of credit issued by Bank SNB to FHA MPT.

97. **Maricopa County:** Maricopa County, Arizona, a governmental unit of the State of Arizona.

98. **Mr. Calvert:** This term shall mean the former Chief Financial Officer of the Debtors, Randall Calvert.

99. **Mr. Wanger:** This term shall mean the former Chief Executive Officer of the Debtors, David Wanger.

100. **MPT FHA Lease**: The *Lease Agreement* between FHA and FHA MPT dated November 4, 2010, concerning the FHA Hospital Property.

**101. MPT GH Lease**: The *Lease Agreement* between GH and FHA MPT dated as of April 5, 2007, as amended, concerning the GH Hospital Property.

**102. New Value Election**: The option provided to current Interest Holders in FHA to purchase membership interests in Reorganized FHA.

**103. New Value Member**: This term shall mean a Person who participates in the New Value Election in Reorganized FHA.

**104. Person**: Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

**105. Peoria Property**: This term shall mean the 41 acres of real property owned by GH-41, commonly referred to as Lots 2 and 3 of a larger tract of land located at 26230 North Lake Pleasant Parkway, Peoria, Arizona.

**106. Pinal County**: Pinal County, Arizona, a governmental unit of the State of Arizona.

**107. Plan Agent**: This term shall mean the Person designated by the Reorganized Debtors to perform the tasks of the Plan Agent, as discussed below in section V.H.

**108. Plan Benefit Claims:** This term shall include FHA Healthcare Claims, GH Healthcare Claims, FHA PTO Claims, GH PTO Claims, FHA 409(a) Claims, and GH 409(a) Claims. When used in reference to a single Debtor, the term includes only Claims against that Debtor.

**109. Plan Rate**: The rate of interest to be paid with respect to Allowed Claims entitled to recover interest pursuant to this Amended Joint Plan, except when another rate is specified in this Amended Joint Plan for a particular Class of Claims. The Plan Rate shall be 1.5% per annum, unless the Bankruptcy Court determines that the Plan Rate should be some other amount, in which case the Plan Rate shall be the rate determined by the Bankruptcy Court.

**110. Plan Proponents**: This term shall mean GH and Bank SNB.

**111. Priority Claim**: The Claim of a Claimant, to the extent that it is entitled to priority in payment under 11 U.S.C. §§ 507(a)(3) through (a)(10). Priority Claims include Plan Benefit Claims, Priority Tax Claims, and Wage Claims.

**112. Priority Tax Claims**: Claims of governmental units that are entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

**113. Pro Rata**: The ratio of an Allowed Claim or Allowed Interest in a particular Class to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

**114. Reorganized Debtors**: The Debtors after the Effective Date.

**115.** **Reorganized FHA:** This term shall mean FHA after the Effective Date.

**116.** **Reorganized GH:** This term shall mean GH after the Effective Date.

**117.** **Reserves:** This term shall mean all reserves determined to be necessary or appropriate by Senior Management, including but not limited to the reserves discussed in section V.D.3 below.

**118.** **Restructured SNB Loan:** This term shall refer to the FHA SNB Debt, the GH Direct Indebtedness, and the GH Guaranty, as restructured pursuant to the Amended Joint Plan, as described in section V.E below.

**119.** **Revolver:** This term shall refer to the new revolving line of credit to be extended by Bank SNB on the Effective Date, as described in section V.E.4 below.

**120.** **Secured Claim:** A Claim (a) secured by a lien on collateral which is unavoidable, to the extent of the value of such collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code; or (b) to the extent that such Claim is subject to setoff under Section 553 of the Bankruptcy Code.

**121.** **Senior Management:** This term shall mean, as of the Effective Date, the senior management of Holdco, which shall be Mr. Bryan Hargis, as chief executive officer, Mr. Dennis Rutherford, as chief financial officer, and Ms. Marla Meggers as chief nursing officer, and potentially chief operating officer.

**122.** **Senior Management Equity Pool:** This term shall mean a portion of the membership interests in Holdco, as described in section V.A.5 below.

**123.** **Sweep Dispute**: This term shall mean the dispute between Bank SNB and GH regarding whether the Swept Funds are recoverable by GH under 11 U.S.C. § 553(b), and, if so, whether the Swept Funds would remain cash collateral of Bank SNB.

**124.** **Swept Funds:** This term shall mean the $1,085,084.09 swept by Bank SNB from GH's deposit accounts on February 3, 4, and 5, 2014.

**125.** **Tax Distributions:** This term shall mean the amounts of cash that will be distributed to members of Holdco and New Value Members of Reorganized FHA for the purposes and in the amounts discussed in section V.A.6 below.

**126.** **Undersecured**: This term describes a holder of a Claim that is a Secured Claim in part and an Unsecured Claim in part.

**127.** **Unsecured Claim**: A Claim to the extent that such Claim is not a Secured Claim.

**128.** **Unliquidated**: The term describes the Claim of a Creditor when the value of the claim has not been determined or stated with finality.

**129.** **Wage Claims**: Unsecured Claims of employees of a Debtor for wages, salaries or commissions, including vacation, severance, and sick leave pay earned by such employees within 180 days before the FHA Petition Date or the GH Petition Date, as applicable, but only to the extent of $11,725 per employee of FHA or $12,475 per employee of GH.

## III.    CLASSIFICATION OF CLAIMS AND INTERESTS

Holders of Claims against, and Interests in, the Debtors, of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, direct or indirect, including all Claims arising from the rejection of executory contracts, and all Claims or Interests arising from the ownership of equity securities in the Debtors, shall be bound by the provisions of this Amended Joint Plan.  All Claims are classified as provided in this section.

Each Class of Claims against, or Interests in, the Debtors is identified by a three-part designation in the form "N.NN.L." The first number of the designation indicates the general priority category of the class: <u>Priority</u> Claim (designated "1.NN"), <u>Secured</u> Claim ("2.NN"), <u>General Unsecured</u> Claim ("3.NN") or <u>Interest</u> ("4.NN"). The second number identifies the specific Class within the general priority category. The letter of the designation indicates the Debtor the Claim is against or Interest is in: FHA Claims or Interests ("N.NN.A") and GH Claims or Interests ("N.NN.B")

### A.    Priority Claims (Class 1—but not formally classified)
Priority Claims are classified as follows:

1.    **Class 1.01—Administrative Claims**
    a.    **Class 1.01.A—FHA Administrative Claims**
        Class 1.01.A shall consist of Administrative Claims in the FHA Bankruptcy.
    b.    **Class 1.01.B—GH Administrative Claims**
        Class 1.01.B shall consist of Administrative Claims in the GH Bankruptcy.
2.    **Class 1.02—Wage Claims**
    a.    **Class 1.02.A—FHA Wage Claims**
        Class 1.02.A shall consist of Wage Claims in the FHA Bankruptcy.
    b.    **Class 1.02.B—GH Wage Claims**
        Class 1.02.B shall consist of Wage Claims in the GH Bankruptcy.
3.    **Class 1.03—Plan Benefit Claims**
    a.    **Class 1.03.A—FHA Plan Benefit Claims**
        Class 1.03.A shall consist of Plan Benefit Claims in the FHA Bankruptcy.
    b.    **Class 1.03.B—GH Plan Benefit Claims**
        Class 1.03.B shall consist of Plan Benefit Claims in the GH Bankruptcy.
4.    **Class 1.04—Priority Tax Claims**
    a.    **Class 1.04.A—FHA Priority Tax Claims**
        Class 1.04.A shall consist of Priority Tax Claims in the FHA Bankruptcy that are not Secured Claims.
    b.    **Class 1.04.B—GH Priority Benefit Claims**
        Class 1.04.B shall consist of Priority Tax Claims in the GH Bankruptcy that are not Secured Claims.

**B.     Secured Claims (Class 2)**

Secured Claims are classified as follows:

**1.     Class 2.01.A—FHA Bank SNB Debt and LOC Claim**

Class 2.01.A shall consist of Bank SNB's Claim for the FHA SNB Debt and the LOC Claim.

**2.     Class 2.02.B—GH Bank SNB Claim**

Class 2.02.B shall consist of Bank SNB's Claim for the GH Direct Indebtedness and its Claim on the GH Guaranty.

**3.     Class 2.03.A—FHA Pinal County, Arizona Claim**

Class 2.03.A shall consist of the Secured Claim of Pinal County against FHA, if any, secured by an *ad valorem* tax lien on the FHA Hospital Property.

**4.     Class 2.04.B—GH Maricopa County, Arizona Claim**

Class 2.03.B shall consist of the Secured Claim of Pinal County against GH, if any, secured by an *ad valorem* tax lien on the GH Hospital Property.

**5.     Class 2.05.A—FHA Covidien-Mallinckrodt Claim**

Class 2.05.A shall consist of the Secured Claim of Covidien against FHA.

**6.     Class 2.06.A—FHA Johns Claim**

Class 2.06.A shall consist of the Claim of Dr. Johns against FHA in the principal amount of $100,000, which has been asserted as a Secured Claim secured by a junior lien on certain assets of FHA, as described in the *Emergency Motion for Order Authorizing Debtor-in-Possession Financing* (FHA DE 154).

**7.     Class 2.07.B—GH Iron Mountain Claim**

Class 2.07.B shall consist of the Claim of Iron Mountain Information Management, LLC against GH, which has been asserted as a Secured Claim.

**C.     General Unsecured Claims (Class 3)**

General Unsecured Claims are classified as follows:

**1.     Class 3.01.A—Unsecured Claims against FHA**

Class 3.01.A shall consist of all General Unsecured Claims against FHA.

**2.     Class 3.02.B—Unsecured Claims against GH**

Class 3.02.B shall consist of all General Unsecured Claims against against GH.

**D.     Membership Interests (Class 4)**

Interests are classified as follows:

**1.     Class 4.01.A—Membership Interests in FHA**

Class 4.01.A shall consist of all Interests in FHA.

**2.     Class 4.02.B—Membership Interests in GH**

Class 4.01.B shall consist of all Interests in GH.

**IV.     TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

This section describes the treatment of each Class of Claims and Interests classified in the Amended Joint Plan. Notwithstanding these provisions, the holder of a Claim or Interest may agree to a less favorable treatment of all or any portion of its Claim or Interest.

## A.  Priority Claims (Class 1—but not formally classified)

Priority Claims are treated as follows:

**1.  Class 1.01—Administrative Claims**

**a.  Class 1.01.A—FHA Administrative Claims**

In the FHA Bankruptcy, there are three types of Class 1.01.A Claims:

### (1)  Class 1.01.A.i—Professional Fees

FHA Professionals will receive Cash from the FHA Liquidating Trust in the amount awarded to such Professionals in accordance with, and at such times as may be provided in, Final Orders entered pursuant to §§ 330 or 503(b)(2) through (6) of the Bankruptcy Code, less amounts paid previously.

Reorganized GH, with the consent of Bank SNB shall provide $500,000 on the Effective Date to the FHA Liquidating Trust to be applied toward the satisfaction of all Allowed Class 1.01.A.i Administrative Claims.  In addition, the other FHA Trust Assets shall be used to pay any Allowed Class 1.01.A.i Administrative Claims of the FHA Estate's Professionals before the any General Unsecured Claims are paid.

### (2)  Class 1.01.A.ii—Section 503(b) Ordinary-Course Claims

Allowed Administrative Claims for goods or services provided to FHA in the ordinary course of business after the FHA Petition Date and on or prior to the Effective Date shall be paid in the ordinary course of business by Reorganized FHA and, to the extent necessary, by Holdco through intercompany borrowing.

### (3)  Class 1.01.A.iii—Other Administrative Claims

All Administrative Claims of GH against FHA shall be deemed withdrawn on the Effective Date.  Each other holder of an Allowed Administrative Claim against FHA shall receive, on account of such Claim, payment of the Allowed amount of such Claim, in cash, on the latest of (i) the Effective Date, (ii) the date on which the Claim becomes Allowed, or (iii) the date upon which such obligation becomes due in accordance with its terms, unless the holder of such Claim agrees to other treatment.

Class 1.02.A Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

**b.  Class 1.02.B—GH Administrative Claims**

In the GH Bankruptcy, there are three types of Class 1.01.B Claims:

### (1)  Class 1.01.B.i—Professional Fees

GH Professionals will receive Cash from Reorganized GH in the amount awarded to such professionals or entities in accordance with, and at such times as may be provided in, Final Orders entered pursuant to §§ 330 or 503(b)(2) through (6) of the Bankruptcy Code, less amounts paid previously.

### (2)  Class 1.01.A.ii—Section 503(b) Ordinary-Course Claims

Allowed Administrative Claims for goods or services provided to GH in the ordinary course of business after the GH Petition Date and on or prior to the Effective Date shall be paid in the

ordinary course of business by Reorganized GH.

       (3)  Class 1.01.A.iii—Other Administrative Claims

    All Administrative Claims of FHA against GH shall be deemed withdrawn on the Effective Date. Each other holder of an Allowed Administrative Claim against GH shall receive, on account of such Claim, payment of the Allowed amount of such Claim, in cash, on the latest of (i) the Effective Date, (ii) the date on which the Claim becomes Allowed, or (iii) the date upon which such obligation becomes due in accordance with its terms, unless the holder of such Claim agrees to other treatment.

    Class 1.02.B Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

    **2.**   **Class 1.02—Wage Claims**
      **a.**   **Class 1.02.A—FHA Wage Claims**
    Each holder of an Allowed FHA Wage Claim shall receive, on account of such Claim, payment by the FHA Liquidating Trust of the Allowed amount of such Claim, in cash, on the latest of (i) the Effective Date, (ii) the date on which the Claim becomes Allowed, or (iii) the date upon which such obligation becomes due in accordance with its terms, unless the holder of such Claim agrees to other treatment. The Plan Proponents do not believe that there are any unpaid FHA Wage Claims.

    Class 1.02.A Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

      **b.**   **Class 1.02.B—GH Wage Claims**
    Each holder of an Allowed GH Wage Claim shall receive, on account of such Claim, payment of the Allowed amount of such Claim, in cash, on the latest of (i) the Effective Date, (ii) the date on which the Claim becomes Allowed, or (iii) the date upon which such obligation becomes due in accordance with its terms, unless the holder of such Claim agrees to other treatment. The Plan Proponents do not believe that there are any unpaid GH Wage Claims.

    Class 1.02.B Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

    **3.**   **Class 1.03—Plan Benefit Claims**
      **a.**   **Class 1.03.A—FHA Plan Benefit Claims**
    In the FHA Bankruptcy, there are three types of Class 1.03.A Claims:

        (1) <u>Class 1.03.A.i—Healthcare Claims</u>

    Any unpaid FHA Healthcare Claims that have been adjudicated by the FHA TPA will be paid by the FHA Liquidating Trust in full in cash on the Effective Date. Unpaid FHA Healthcare Claims that have not been adjudicated will be adjudicated and paid in the ordinary course. Reorganized FHA reserves the right to audit such Claims and to seek compromises of such Claims as may be acceptable to the beneficial holders of such Claims. Any claims disallowed by the FHA TPA will be subject to non-bankruptcy law dispute and enforcement mechanisms. The Bankruptcy Court will not retain jurisdiction of FHA Healthcare Claims. Nothing in this Amended Joint Plan or

the Confirmation Order shall impact, impair, limit, or alter any past or present employee's rights to have FHA Healthcare Claims paid, subject to the terms of the applicable healthcare benefits plan. The Plan Proponents do not believe that there are any unpaid FHA Healthcare Claims.

### (2) Class 1.03.A.ii—PTO Claims

All Allowed FHA PTO Claims owed to former employees of FHA will be paid by the FHA Liquidating Trust in full in cash on the Effective Date. All Allowed FHA PTO Claims owed to current FHA employees will be honored or paid in the ordinary course of business, subject to the policies of FHA as established from time to time, and subject to non-bankruptcy law dispute and enforcement mechanisms. The Bankruptcy Court will not retain jurisdiction of FHA PTO Claims. Nothing in this Amended Joint Plan or the Confirmation Order shall impact, impair, limit, or alter any past or present employee's rights under non-bankruptcy law to have his or her FHA PTO Claim honored under the terms of FHA's established polices.

### (3) Class 1.03.A.iii—409(a) Claims.

All Allowed FHA 409(a) Claims, entitled to priority treatment under 11 U.S.C. § 507, will be paid by the FHA Liquidating Trust in full in cash on the Effective Date. The Plan Proponents do not believe that there will be any Allowed FHA 409(a) Claims entitled to priority.

Class 1.03.A Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

### b.      Class 1.03.B—GH Plan Benefit Claims

In the GH Bankruptcy, there are three types of Class 1.03.B Claims:

### (1) Class 1.03.B.i—Healthcare Claims

Any unpaid GH Healthcare Claims that have been adjudicated by the GH TPA will be paid in full in cash on the Effective Date. Unpaid GH Healthcare Claims that have not been adjudicated will be adjudicated and paid in the ordinary course. Reorganized GH reserves the right to audit such Claims and to seek compromises of such Claims as may be acceptable to the beneficial holders of such Claims. Any claims disallowed by the GH TPA will be subject to non-bankruptcy law dispute and enforcement mechanisms. The Bankruptcy Court will not retain jurisdiction of GH Healthcare Claims. Nothing in this Amended Joint Plan or the Confirmation Order shall impact, impair, limit, or alter any past or present employee's rights to have GH Healthcare Claims paid, subject to the terms of the applicable healthcare benefits plan. The Plan Proponents do not believe that there are any unpaid GH Healthcare Claims.

### (2) Class 1.03.B.ii—PTO Claims

All Allowed GH PTO Claims owed to former employees of GH will be paid in full in cash on the Effective Date. All Allowed GH PTO Claims owed to current GH employees will be honored or paid in the ordinary course of business, subject to the policies of GH as established from time to time, and subject to non-bankruptcy law dispute and enforcement mechanisms. The Bankruptcy Court will not retain jurisdiction of GH PTO Claims. Nothing in this Amended Joint Plan or the Confirmation Order shall impact, impair, limit, or alter any past or present employee's rights under non-bankruptcy law to have his or her GH PTO Claim honored under the terms of GH'a established polices.

(3) <u>Class 1.03.B.iii</u>—409(a) Claims.

All Allowed GH 409(a) Claims entitled to priority treatment under 11 U.S.C. § 507 will be paid in full in cash on the Effective Date. The Plan Proponents do not believe any GH 409(a) Claims will be entitled to priority treatment.

Class 1.03.B Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

### 4.    Class 1.04—Priority Tax Claims
#### a.    Class 1.04.A—FHA Priority Tax Claims

As provided in 11 U.S.C. § 1129(a)(9)(C), unless a Claimant holding a Claim in this Class agrees to an alternative form of treatment, each Claimant holding an Allowed Priority Tax Claim against FHA shall receive regular installment payments from the Liquidating Trust in cash a) of a total value, as of the Effective Date of the Amended Joint Plan, equal to the Allowed amount of such Claim, together with interest at the Plan Rate; b) over a period ending not later than 5 years after the FHA Petition Date; and c) in a manner not less favorable than the most favored non-priority unsecured claim provided for by the Amended Joint Plan.

Class 1.04.A Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

#### b.    Class 1.04.B—GH Priority Tax Claims

As provided in 11 U.S.C. § 1129(a)(9)(C), unless a Claimant holding a Claim in this Class agrees to an alternative form of treatment, each Claimant holding an Allowed Priority Tax Claim against GH shall receive regular installment payments in cash a) of a total value, as of the Effective Date of the Amended Joint Plan, equal to the Allowed amount of such Claim, together with interest at the Plan Rate; b) over a period ending not later than 5 years after the GH Petition Date; and c) in a manner not less favorable than the most favored non-priority unsecured claim provided for by the Amended Joint Plan.

Class 1.04.B Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

### B.    Secured Claims

This section provides a description and treatment for the Secured Claims against both of the Debtors. The GH Schedules identify numerous leases as Secured Claims (GH DE 103), but any Claim not classified in this section, regardless of how it was scheduled, will be treated as an operating lease in accordance with section VI.E, below.

### 1.    Class 2.01.A—FHA Bank SNB Debt and LOC Claim

(a) <u>Description:</u> Class 2.01.A consists of Bank SNB's Secured Claim against FHA. As of the FHA Petition Date, the FHA SNB Debt had a liquidated balance of $9,854,625.06, consisting of the following two loans:

i.    Loan ending 8100, which had an FHA Petition Date balance of

$4,827,944.50; and

    ii.  Loan ending 8200, which had an FHA Petition Date balance of $5,026,680.56.

In addition, Bank SNB holds the Contingent LOC Claim in the amount of $1,200,000, plus additional interest, fees, expenses, and other charges. The FHA SNB Debt and the LOC Claim are secured by a first-priority lien on substantially all of the assets of FHA.

    **(b)** <u>**Treatment:**</u> The FHA SNB Debt shall be Allowed as a Secured Claim in the amount of $9,854,625.06. In full satisfaction of the FHA SNB Debt, Bank SNB shall be entitled to receive a promissory note or other evidence of indebtedness representing the Restructured SNB Loan, to be secured and repaid as described in section V.E below. The LOC Claim shall be Allowed as a Contingent Secured Claim in the amount of $1,200,000, plus additional interest, fees, expenses, and other charges. Reorganized FHA shall remain liable on the LOC Claim according to its terms, including any additional amounts to the extent that the related letter of credit is increased, amended, or replaced by Bank SNB. Holdco and Reorganized GH shall guaranty the LOC Claim. In addition to other collateral, the LOC Claim shall be secured by the Swept Funds, as described in section V.E.2 below.

    **(c)** <u>**Impairment and Voting:**</u> Class 2.01.A is impaired. Bank SNB, as a Plan Proponent, is deemed to have accepted the Amended Joint Plan.

### 2.    Class 2.02.B—GH Bank SNB Claim

    **(a)** <u>**Description:**</u> Class 2.01.B consists of Bank SNB's Secured Claim against GH. As of the GH Petition Date, the GH Direct Indebtedness had a balance of $3,534,264.50, consisting of the following three loans:

    i.  a land loan note with a balance of $838,102.42;
    ii.  a working capital loan with a balance of $1,182,395.74; and
    iii.  an equipment loan of $1,513,766.44.

The GH Direct Indebtedness is secured by a first-priority lien on substantially all of the assets of GH.

In addition, Bank SNB's Claim on the GH Guaranty, as of the GH Petition Date, was $11,388,845.71. The total Secured Claim of Bank SNB is $14,923,110.31 as of the GH Petition Date, plus additional interest, fees, expenses, and other charges.

    **(b)** <u>**Treatment:**</u> The GH Direct Indebtedness and the GH Guaranty shall be Allowed as a Secured Claim in the aggregate amount of $14,923,110.31. In full satisfaction of the this Secured Claim, Bank SNB shall be entitled to receive a promissory note or other evidence of indebtedness representing the Restructured SNB Loan, to be secured and repaid as described in section V.E.3 below. Nothing in the Amended Joint Plan shall prejudice GH in the Guaranty Disputes in the event that the Amended Joint Plan is not confirmed.

**(c) Impairment and Voting:** Class 2.01.B is impaired. Bank SNB, as a Plan Proponent, is deemed to have accepted the Amended Joint Plan.

### 3. Class 2.03.A—FHA Pinal County, Arizona Claim

The Allowed Secured Claim of Pinal County, if any, will be paid by Reorganized FHA in equal quarterly payments of principal and interest over a term of three (3) years. The first payment will be made on or before the ninetieth day after the Effective Date, and each payment thereafter will be made on the first business day of each succeeding quarter. Interest will accrue and will be paid at the statutory rate of 16% per annum. Pinal County will retain its existing lien on the FHA Hospital Property until its Allowed Secured Claim has been satisfied in full.

This Class is impaired, and the Claimant is entitled to vote to accept or reject the Amended Joint Plan.

### 4. Class 2.04.B—GH Maricopa County, Arizona Claim

The Allowed Secured Claim of Maricopa County, if any, will be paid by Reorganized GH in equal quarterly payments of principal and interest over a term of three (3) years. The first payment will be made on or before the ninetieth day after the Effective Date, and each payment thereafter will be made on the first business day of each succeeding quarter. Interest will accrue and will be paid at the statutory rate of 16% per annum. Maricopa County will retain its existing lien on the GH Hospital Property until its Allowed Secured Claim has been satisfied in full.

This Class is impaired, and the Claimant is entitled to vote to accept or reject the Amended Joint Plan.

### 5. Class 2.05.A—FHA Covidien-Mallinckrodt Claim

This Class consists of the Allowed Secured Claim of Covidien, in the approximate amount of $4,324, secured by a lien the Covidien Collateral used by FHA in connection with its operations. This Claim will be Allowed as a Secured Claim in the amount of the outstanding balance of the Claim on the Effective Date. Covidien's Allowed Secured Claim will be treated as follows: (a) Covidien will retain its lien on the Covidien Collateral until its Allowed Secured Claim is paid in full; (b) on the Effective Date, Reorganized FHA will pay to Covidien the sum of $400, which amount will be applied to the principal balance of Covidien's Allowed Secured Claim; (c) the remainder of Covidien's Allowed Secured Claim will paid in full in equal quarterly installments of principal and interest, accruing at the rate of 6% per annum, over three (3) years, commencing on the ninetieth day after the Effective Date and ending on the third anniversary of the Effective Date; (d) Reorganized FHA will have the right, in its sole and absolute discretion, to pre-pay the full amount of Covidien's Allowed Secured Claim at any time without penalty; and (e) immediately upon payment in full of Covidien's Allowed Secured Claim, its security interest in the Covidien Collateral and any other collateral securing Covidien's Allowed Claim will be deemed satisfied, extinguished, and released in full.

This Class is impaired, and the Claimant is entitled to vote to accept or reject the Amended Joint Plan.

### 6. Class 2.06.A—FHA Johns Claim

The Plan Proponents believe that senior lien(s) fully encumber the assets that secure the Claim of Dr. Johns, such that the junior lien of Dr. Johns has no value. Therefore, Dr. Johns' Claim against FHA shall be Allowed as a General Unsecured Claim in the amount of $100,000 and shall be treated as provided in Class 3.01.A, below.

This Class is impaired, and the Claimant is entitled to vote to accept or reject the Amended Joint Plan.

### 7. Class 2.07.B—GH Iron Mountain Claim

The total amount of the Claim asserted by Iron Mountain is $11,070.15, but only $1,376.00 of the Claim is secured by personal property held in a storage facility. This Claim shall be Allowed as a Secured Claim in the amount of $1,376.00 and as a General Unsecured Claim in the amount of $9,694.15. The Allowed Secured Claim shall be paid in full in cash on the Effective Date of the Plan. The Allowed General Unsecured Claim shall be treated as provided in Class 3.02.B, below.

This Class is impaired, and the Claimant is entitled to vote to accept or reject the Amended Joint Plan.

### C. General Unsecured Claims (Class 3)

General Unsecured Claims are treated as follows:

### 1. Class 3.01.A—General Unsecured Claims against FHA

All General Unsecured Claims of GH against FHA shall be deemed withdrawn on the Effective Date. All other Claimants holding Allowed General Unsecured Claims against FHA will receive Pro Rata distributions under the terms of the FHA Trust Agreement from the FHA Liquidating Trust, as described in section V.G below.

This Class is impaired, and Claimants are entitled to vote to accept or reject the Amended Joint Plan.

### 2. Class 3.02.B—General Unsecured Claims against GH

All General Unsecured Claims of FHA against GH shall be deemed withdrawn on the Effective Date. All other Claimants holding Allowed General Unsecured Claims against FHA will be paid in full, including simple interest at the Plan Rate, during the term of the Amended Joint Plan through Pro Rata quarterly distributions by Reorganized GH of: a) Distributable Cash; b) Distributable Real Estate Proceeds; c) Distributable Net Refinancing Proceeds; d) Distributable Proceeds of GH Retained Causes of Action; and e) Net Enterprise Liquidation Proceeds.

Any Claimant may elect to receive a discounted payment of its Allowed Claim by making an irrevocable election on its ballot accepting or rejecting the Amended Joint Plan. Such an election will entitle the Claimant, at the election of Reorganized GH, to receive an amount equal to 75% of the original amount of its Allowed Claim, less any distributions previously made, in full and final satisfaction of its Allowed Claim on the third anniversary of the Effective Date, if such a distribution is feasible given the Distributable Cash available on the third anniversary of the

Effective Date. The determination of whether there is sufficient Distributable Cash available on the third anniversary of the Effective date to pay any Claimant will be made in the sole discretion of Reorganized GH.

This Class is impaired, and Claimants are entitled to vote to accept or reject the Amended Joint Plan.

### D. Equity Interests (Class 4)

#### 1. Class 4.01.A—Membership Interests in FHA

All Interests in FHA shall be cancelled on the Effective Date. All of the membership interests in Reorganized FHA shall be issued to Holdco, subject only to the opportunity of Interest Holders with Allowed Interests to participate in the New Value Election, discussed in section V.A.4.c below. Distributions to New Value Members in Reorganized FHA will be limited during the term of the Amended Joint Plan, as described in section V.A.4.c below.

This Class is impaired, and Interest Holders are entitled to vote to accept or reject the Amended Joint Plan.

#### 2. Class 4.02.B—Membership Interests in GH

All Interests in GH shall be cancelled on the Effective Date. All of the membership interests in Reorganized GH shall be issued to Holdco. Interest Holders with Allowed Interests in GH will receive, on account of their Allowed Interests in GH, their Pro Rata share of the new membership interests in Holdco available after the allocation of the proposed 11% of such interests to the Senior Management Equity Pool. Distributions to holders of membership interests in Holdco will be limited during the term of the Amended Joint Plan, as described in section V.A.4.a below.

This Class is impaired, and Interest Holders are entitled to vote to accept or reject the Amended Joint Plan.

## V. IMPLEMENTATION OF THE AMENDED JOINT PLAN

### A. Restructuring of FHA and GH

#### 1. Creation of Holding Company

Holdco shall be formed on or prior to the Effective Date. Each of Reorganized FHA and Reorganized GH will amend its operating agreements on the Effective Date to provide that it will be managed by Holdco and to include other provisions consistent with the Amended Joint Plan.

#### 2. Holdco Corporate Governance

Holdco will be managed by a five-member board of managers consisting of four members of GH's current board of managers, Dr. M.M. Salim, Dr. Brad Newswander, Mr. Bryan McCormick, and Dr. Robert Mead, with the addition of Mr. Bryan Hargis, GH's current chief executive officer. The composition of the board of managers shall not be altered during the term of the Amended Joint Plan, subject only to the resignation, incapacity, or other inability of a member to serve. In the event of resignation, incapacity, or other inability to serve, the first replacement member of the board of managers shall be Mr. Dennis Rutherford, GH's current chief financial

officer, provided Mr. Rutherford is still employed as Senior Management at Holdco. If Mr. Rutherford is no longer employed by Holdco, the replacement board member shall be selected by majority vote of the remaining members of the board; provided, however, that under no circumstances may Dr. Johns be serve on the board during the term of the Amended Joint Plan. Further, any subsequent replacement member shall be selected by majority vote of the remaining members of the board; provided, however, that under no circumstances may Dr. Johns be serve on the board during the term of the Amended Joint Plan.

### 3. Reorganized Debtors' Management

On the Effective Date, Messrs. Hargis and Rutherford will be appointed as the chief executive officer and chief financial officer, respectively, and with Ms. Marla Meggers appointed as chief nursing officer and potentially chief operating officer of both Reorganized Debtors, ("Senior Management"), and will exercise operational control of both entities. Under no circumstances during the term of the Amended Joint Plan may Dr. Johns have any management position involving direct or indirect control of the business operations or finances (as distinct from the clinical operations) of Holdco or either Reorganized Debtor.

### 4. Cancellation of Existing Membership Interests and Issuance of New Membership Interests

#### a) GH

All Interests in GH shall be cancelled on the Effective Date. All of the membership interests in Reorganized GH shall be issued to Holdco. Interest Holders with Allowed Interests in GH will receive, on account of their Allowed Interests in GH, their Pro Rata share of the new membership interests in Holdco net of the proposed 11% of such interests to be placed in the Senior Management Equity Pool. During the term of the Amended Joint Plan, distributions to holders of membership interests in Holdco shall be limited to the Tax Distributions, and holders shall be permitted to vote only to approve the sale of all or substantially all of the assets of Holdco, the equity interests in either Reorganized Debtor, or the assets of either Reorganized Debtor.

#### b) FHA

All Interests in FHA shall be cancelled on the Effective Date. All of the membership interests in Reorganized FHA shall be issued to Holdco, subject only to the opportunity of Interest Holders with Allowed Interests in FHA to participate in the New Value Election.

#### c) New Value Election

Any Interest Holder with an Allowed Interest in FHA shall be entitled to subscribe to purchase a Pro Rata share of ten percent (10%) of the newly issued membership interests in FHA, and thereby to become a New Value Member in Reorganized FHA, by making an irrevocable election on its ballot accepting or rejecting the Amended Joint Plan. The total subscription price of the new membership interests available for subscription shall be $500,000, and an Interest Holder's election to participate in the New Value Election will require the Interest Holder to tender its Pro Rata portion of that amount to GH's attorneys in immediately available funds within ten (10) business days following Confirmation of the Amended Joint Plan. To the extent that Interest Holders do not make the New Value Election or do not make timely payment in fulfillment of their subscriptions, the membership interests otherwise available shall be issued to Holdco. The total proceeds of the New Value Election shall be used to fund the Amended Joint Plan.

#### d) Excluded Assets

GH may, at its election and in its sole discretion, identify prior to the Confirmation Hearing on this Amended Joint Plan any assets of FHA that it wishes to denominate as Excluded Assets. Title to the Excluded Assets shall vest in the FHA Liquidating Trust on the Effective Date.

### 5. Senior Management Equity Pool and Employment Contracts

As an inducement for Senior Management to remain in the employ of Holdco and responsible for the operations of the Reorganized Debtors during the term of this Amended Joint Plan, it is proposed that 11% of the newly issued membership interests in Holdco shall be earmarked for the Senior Management Equity Pool for Senior Managment. The Senior Management Equity Pool shall include a requirement of continuing employment and a reasonable vesting schedule. The specific terms of the Senior Management Equity Pool shall be approved by the existing board of GH, filed with the Bankruptcy Court, and made available to creditors and parties in interest as may be required by the Bankruptcy Court in connection with the approval of this Amended Joint Plan.

Each member of Senior Management also shall be offered an employment contract by Holdco. The specific terms of such contract, including compensation terms, shall be negotiated by Mr. Hargis, with the exception of his own contract and compensation terms, provided, however, that all Senior Management contracts including compensation terms shall be approved by the existing board of GH, filed with the Bankruptcy Court, and made available to creditors and parties in interest as may be required by the Bankruptcy Court in connection with the approval of this Amended Joint Plan.

### 6. Tax Distributions

Distributions to holders of membership interests in Holdco and, to the extent that Interest Holders make the New Value Election, distributions to New Value Members in Reorganized FHA, shall be limited during the term of this Amended Joint Plan to annual distributions of 40% of the I.R.S. Form K-1 income reported to the holders of such membership interests ("Tax Distributions"). Such distribution rate may be adjusted in the event of legislative or regulatory changes to marginal tax rate structures during the term of the Amended Joint Plan. Holdco and FHA shall be allowed and obligated to make Tax Distributions so long as there are funds reasonably available to do so, after satisfying all ordinary operating expenses, making required payments to Bank SNB, and funding ongoing Reserves. Any such distributions also shall be subject to the consent of Bank SNB, which shall not be unreasonably withheld.

### B. Impact of the Settlement of the GH Lawsuits

Confirmation of the Amended Joint Plan shall not impact the enforceability of the Global Settlement and the Dismissal Order on the signatories to the Settlement Term Sheet. In the event of any conflict, however, between the terms of the Dismissal Order and the Global Settlement (on the one hand), and this Amended Joint Plan and the Confirmation Order (on the other), the Amended Joint Plan and the Confirmation Order shall control. Capitalized terms used in this section and not defined in this Amended Joint Plan have the meanings given to them in the Amended Joint DS.

### C.    Interdebtor Claims

GH has filed a General Unsecured Claim against FHA in the amount of $11,209,683.12, plus interest.  GH has also sought payment of an Administrative Claim against FHA in the amount of at least $1,300,000.  FHA has filed a General Unsecured Claim against GH, alleging that GH received not less than $2,263,341.58 in alleged preferential payments in the year prior to the FHA Petition Date. All of these Claims will be deemed withdrawn on the Effective Date.

### D.    Operation of Holdco and the Reorganized Debtors During the Term of the Amended Joint Plan

#### 1.    Operation of the Businesses of the Reorganized Debtors

During the term of this Amended Joint Plan, the Holdco board and Senior Management shall continue to operate the businesses of the Reorganized Debtors in the ordinary course.  They shall be entitled to exercise such business discretion as is reasonable given the history, industry, finances, market conditions, and geographic locations of the operations of the Reorganized Debtors. They shall act in good faith and with reasonable best efforts i) to comply with applicable non-bankruptcy laws; ii) to operate the businesses of the Reorganized Debtors efficiently, effectively, and profitably; and iii) to carry out the provisions of this Amended Joint Plan.

#### 2.    Maintenance of Separate Financial Statements

During the term of this Amended Joint Plan, Holdco shall cause each of the Reorganized Debtors to maintain separate financial and accounting records.  Notwithstanding the foregoing, Holdco may allocate expenses for shared assets and services between and among the Reorganized Debtors, as appropriate.

#### 3.    Establishment, Maintenance, and Increase of Reserves

On the Effective Date, Senior Management shall establish such Reserves as it deems reasonably necessary for operational expenses and capital expenditures of the Reorganized Debtors. From time to time thereafter, Senior Management shall replenish or increase such Reserves as they in good faith deem reasonably necessary, and subject to the restrictions and requirements for funding of the Amended Joint Plan set forth in Section V.F, below, including but not limited to, as necessary, the following:

##### a)    Effective Date Reserve

On the Effective Date, a reserve may be established for any Administrative Claims or Priority Claims that are not yet Allowed, and for disputed Cure Payments (the "Effective Date Reserve"). The amount of the Effective Date Reserve shall be established in the sole discretion of the Reorganized Debtors and shall be adjusted as necessary to meet the needs of the Reorganized Debtors under the Amended Joint Plan.

**b)** **Operating Reserve**

Prior to any distributions in satisfaction of Allowed General Unsecured Claims in Class 3.02.B, Holdco for the benefit of Reorganized GH and Reorganized FHA shall establish an aggregate $10,000,000 operating reserve (the "Operating Reserve"). Senior Management may in its sole discretion replenish this reserve from available, otherwise-Distributable Cash, from time to time thereafter.

**c)** **Revolver Reserve**

As discussed in section V.F.2 below, there may be a need for the Reorganized Debtor to establish a $750,000 reserve to cash collateralize the Revolver under the terms of the GH/Bank SNB Compromise.

**E.** **Settlement and Compromise of GH Claims against Bank SNB and Consolidation and Restructuring of Bank SNB Claims**

As described in the Amended Joint DS, GH maintains that it has valid legal claims against Bank SNB to recover the Swept Funds, and to avoid the pre-petition foreclosure of Bank SNB's deed-of-trust lien on the Adjacent Property. GH also maintains that the GH Guaranty is an unsecured claim and that it may be avoided in whole or in part as a fraudulent conveyance. Bank SNB disagrees with each of these claims and legal positions. GH and Bank SNB have reached an omnibus agreement to compromise these claims and legal disputes, and to consolidate and restructure Bank SNB's claims in Classes 2.01.A and 2.02.B in connection with the restructuring of FHA and GH. The GH/Bank SNB Compromise consists of the following terms:

**1.** **Consolidation and Cross-Collateralization of Bank SNB Claims**

The GH Direct Indebtedness, the Guaranty, and the FHA SNB Debt will be reduced, restructured, and consolidated on the Effective Date into a single obligation in the original principal amount of $14,000,000 (the "Restructured SNB Loan"). The Restructured SNB Loan will be a joint obligation of Holdco, Reorganized FHA, and Reorganized GH and will be collaterally secured by all of the assets of the three obligors and by the assets of GH-41. Holdco, the Reorganized Debtors, and GH-41 will execute such loan and security documents, including a deed of trust on the Peoria Property, as Bank SNB may require. Any release of the deed of trust on the Peoria Property will be conditioned upon the payment to Bank SNB of 50% of the net proceeds of a sale, provided that any such sale must have a minimum gross sale price of $5,000,000. All depository and operating accounts of Holdco and the Reorganized Debtors will be maintained with Bank SNB.

Reorganized FHA shall remain liable on the LOC Claim according to its terms, including any additional amounts to the extent that the related letter of credit is increased, amended, or replaced by Bank SNB. Holdco and Reorganized GH shall be guarantors of the LOC Claim. In addition to being secured by the assets of Reorganized FHA, the LOC Claim shall be secured by the Swept Funds, as described in section V.E.2.i below.

This Amended Joint Plan is not intended to violate or modify the terms of the Intercreditor Agreement. Accordingly, to the extent necessary, Bank SNB shall have the option to require that all or a portion of the Restructured SNB Loan be structured as a principal obligation of Reorganized

FHA, with Reorganized GH and Holdco providing guaranties of such obligation, and with Reorganized FHA providing a guaranty of the remaining portion of the Restructured SNB Loan, all of which guaranties will be collaterally secured by all of the assets of their respective obligors.

## 2. Resolution of GH/Bank SNB Disputes

The GH/Bank SNB Disputes will be resolved as follows:

i.      <u>Sweep Dispute</u>.  On the Effective Date, Bank SNB will return the full balance of the Swept Funds to Reorganized GH.  Reorganized GH will waive and release any claim that it has asserted or may have under 11 U.S.C. § 553, including but not limited to any argument that the Swept Funds are not the cash collateral of Bank SNB, and all other claims it may have relating to the Swept Funds.  The Swept Funds will be maintained with Bank SNB in a certificate of deposit or other interest-bearing instrument or account, which will serve as collateral for the LOC Claim (the "<u>LOC Collateral</u>").  In addition, Reorganized GH will provide additional funds as necessary to fund the LOC Collateral in an amount that fully cash collateralizes (i) the full amount of the LOC Claim, (ii) any increases to the amount of the LOC, and (iii) any additional letter(s) of credit issued by Bank SNB for Reorganized GH, Reorganized FHA, or Holdco (collectively, the "<u>LOCs</u>").  To the extent any of the LOCs is drawn, Bank SNB will have the right immediately to liquidate the LOC Collateral to the extent necessary to satisfy its claims on the LOCs.  To the extent the LOCs are not drawn, and upon GH, FHA, and Holdco fully replacing the LOCs through another banking institution or fully retiring the LOCs, Bank SNB will release the LOC Collateral and its security interest therein, and Holdco will be entitled to the LOC Collateral as well as any interest accrued thereon.  In consideration for the pledge of the Swept Funds to secure the LOCs and the other terms and provisions of the Amended Joint Plan, Bank SNB will agree to extend a revolving line of credit, as provided in section V.E.4 below. If, at the maturity of the Restructured Bank SNB Loan, either of the LOCs remain outstanding, Holdco will need to replace the outstanding LOC.

ii.      <u>Foreclosure Dispute</u>.  On the Effective Date, Reorganized GH will waive and release any claims that it has asserted or may have relating to the Foreclosure Dispute.  On the Effective Date, Bank SNB and Reorganized GH will enter into an agreement in form acceptable to Bank SNB (the "<u>Option Agreement</u>") granting to Reorganized GH an exclusive option to purchase the Adjacent Property (the "<u>Option</u>"), which said Option must be exercised no later than two years from the date of the Option Agreement.  The consideration paid for the Option will be $2 million (the "<u>Option Price</u>"), which Reorganized GH shall pay in cash on the Effective Date or in monthly installments in the amount of $48,826 per month beginning on the ninety-first day after the Effective Date.  GH may pay the unpaid balance of the Option Price at any time during the Option's term without penalty.  As long as no uncured default exists under the Restructured SNB Loan or the Option Agreement, and upon payment of the Option Price in full to Bank SNB, Reorganized GH may exercise the Option to purchase the Adjacent Property for the total purchase price of $2,343,640, which consists of the Option Price paid plus an additional cash payment of $343,640 (the "<u>Option Purchase Price</u>").  Reorganized GH will be responsible for and shall pay all property tax, maintenance, security, and other costs associated with the Adjacent Property (collectively, the "<u>Maintenance Costs</u>") during the Option's term, and agrees to indemnify and hold harmless Bank SNB for, from, and against any such Maintenance Costs.  In the event that Reorganized GH elects to exercise the Option, the monthly Option Price payments, but not payments of the Maintenance Costs, will be credited against the Option Price and the overall

Option Purchase Price. In the event of an uncured default under the Restructured SNB Loan or the Option Agreement, or in the event that Reorganized GH does not exercise the Option prior to the expiration of the Option's term, the Option will be deemed automatically terminated without further action or notice by Bank SNB, and Bank SNB will be entitled to retain all of the payments made under the Option Agreement up to and including the termination date but will not have further recourse against Reorganized GH for any unpaid balance of the Option Price.

Neither the Option Purchase Price nor any payments of the Option Price shall reduce the balance of the Restructured Bank SNB Loan.

If Reorganized GH exercises the Option and purchases the Adjacent Property, the Adjacent Property will secure the Restructured SNB Loan pursuant to a deed of trust in favor of Bank SNB. Reorganized GH will be entitled to a release of the deed of trust upon the payment to Bank SNB of 25% of the net proceeds from the sale of the Adjacent Property in excess of the Option Purchase Price, which payment will be applied to the Restructured SNB Loan. In the event of a "double escrow" of title to the Adjacent Property to (i) Reorganized GH pursuant to the Option Agreement and (ii) a buyer of the Adjacent Land from Reorganized GH, 25% of the net sales proceeds above the Option Purchase Price will be paid to Bank SNB and applied to the Restructured SNB Loan.

iii. <u>Guaranty Disputes</u>. On the Effective Date, GH will waive and release any claims or defenses that it has asserted or may have relating to the GH Guaranty, including but not limited to any claim that the GH Guaranty, in whole or in part, is an avoidable fraudulent transfer under 11 U.S.C. § 544 and 548, or other applicable law; or that the GH Guaranty is an unsecured obligation.

## 3. Restructuring Terms and Plan Treatment

The Restructured SNB Loan will be amortized based on a period of 180 months following the Effective Date at 8.75% simple, annual interest, with monthly principal payments of $77,777.78 plus interest on the outstanding principal balance. For purposes of illustration, the first year's amortization schedule, assuming no reductions of principal from other payments, will be as follows:

|    | Payment      | Principal  | Interest     | Balance         |
|----|--------------|------------|--------------|-----------------|
| 1  | $179,861.11  | $77,777.78 | $102,083.33  | $13,922,222.22  |
| 2  | 179,293.98   | 77,777.78  | 101,516.20   | 13,844,444.44   |
| 3  | 178,726.85   | 77,777.78  | 100,949.07   | 13,766,666.66   |
| 4  | 178,159.72   | 77,777.78  | 100,381.94   | 13,688,888.88   |
| 5  | 177,592.59   | 77,777.78  | 99,814.81    | 13,611,111.10   |
| 6  | 177,025.47   | 77,777.78  | 99,247.69    | 13,533,333.32   |
| 7  | 176,458.34   | 77,777.78  | 98,680.56    | 13,455,555.54   |
| 8  | 175,891.21   | 77,777.78  | 98,113.43    | 13,377,777.76   |
| 9  | 175,324.08   | 77,777.78  | 97,546.30    | 13,299,999.98   |
| 10 | 174,756.95   | 77,777.78  | 96,979.17    | 13,222,222.20   |
| 11 | 174,189.82   | 77,777.78  | 96,412.04    | 13,144,444.42   |
| 12 | 173,622.69   | 77,777.78  | 95,844.91    | 13,066,666.64   |

The Restructured SNB Loan will mature on the date that is 48 months after Effective Date, and the then-outstanding balance will be due and payable in full. Holdco and the Reorganized

Debtors will have the option to prepay the Restructured SNB Loan at any time, and the principal balance of the Restructured SNB Loan will be discounted by $1,500,000 if the Restructured SNB Loan, including the LOC Claim and, to the extent applicable, the Revolver, is paid in full within 18 months after the Effective Date. To the extent that an LOC is drawn upon and the LOC Collateral is insufficient to satisfy the LOC Claim, any balance of the LOC Claim remaining thereafter will be consolidated with the Restructured SNB Loan and paid on the terms described herein.

Prior to maturity of the Restructured SNB Loan, the Reorganized Debtors' combined excess cash flow (which for purposes of this section shall mean all cash remaining after the payment of all ordinary operating expenses of Holdco and the Reorganized Debtors, all monthly debt service payments to Bank SNB, all payments required under the Amended Joint Plan other than payments on GH General Unsecured Claims, and a minimum cash balance of $10,000,000) will be paid on a quarterly basis as follows: 80% to the GH Unsecured Creditors ("GHUC Payment"); and 20% to Bank SNB to be applied to the Restructured SNB Loan. Until the Restructured SNB Loan is paid in full, Holdco will not make any distributions to equity, other than Tax Distributions, and Holdco and the Reorganized Debtors will not make any material business acquisitions (except as may be provided herein) or make any material capital expenditures (except as may be required under applicable leases or as may be provided herein).

### 4. New Revolving Line of Credit

On the Effective Date, Bank SNB will extend a new revolving line of credit in the amount of $750,000 to Holdco and the Reorganized Debtors (the "Revolver"). The Revolver will be secured by all of the assets of Holdco, the Reorganized Debtors, and GH-41, including the Swept Funds, and will be documented pursuant to definitive loan and security documents acceptable to Bank SNB. The Revolver will bear interest at the rate of 8.75% per annum, payable monthly as principal and interest. Any draws on the Revolver will be conditioned upon, and subject to, Holdco's compliance with borrowing base certificate requirements and other covenants described generally in the Amended Joint DS. The Revolver will mature on the last day of the twelfth (12th) month following the Effective Date. If the Revolver is not renewed or extended by Bank SNB, the balance, if any, of the Revolver on the maturity date will convert to term debt, amortized and payable over 24 months of principal and 8.75% simple, annual interest.

### F. Funding for the Amended Joint Plan

The Amended Joint Plan will be funded, including for purposes of making required Effective Date payments, establishment of Reserves, payment of Allowed Claims, and funding the day-to-day operations of Holdco and the Reorganized Debtors, through the application and use of any of the following sources of funding. All Distributable Cash shall be used to fund the Amended Joint Plan Distributions as provided in the Amended Joint Plan. Specifically, as described above, 80% of Distributable Cash shall be used to make Pro Rata distributions to Allowed Class 3.02.B Claimants, and 20% of the Distributable Cash shall be used to make quarterly payments toward the Restructured SNB Loan until the Restructured SNB Loan has been paid in full. After the Restructured SNB Loan has been paid in full all Distributable Cash shall be used to fund the Amended Joint Plan.

**1. Operational Cash Flows and Distributable Cash**

During the term of this Amended Joint Plan, all cash generated from the operation of the businesses of the Reorganized Debtors shall be applied to the following obligations, in this order: a) making required Effective Date payments; b) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; c) making required payments to Bank SNB; and d) establishing, replenishing, or increasing Reserves. Any surplus of cash after satisfying the foregoing obligations shall be deemed "Distributable Cash."

**2. Swept Funds**

To the extent all LOCs are replaced through another banking institution, fully retired, or otherwise satisfied without being drawn as set forth in section V.E, above, and subject to the Revolver Reserve as defined below, Reorganized GH will use the Swept Funds returned to it by Bank SNB to fund the Amended Joint Plan, by application to the following obligations, in this order: a) making required Effective Date payments; b) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; c) making required payments to Bank SNB; and d) establishing, replenishing, or increasing Reserves.

To the extent the Revolver has not been retired and paid in full when all LOCs are replaced, fully retired, or otherwise satisfied without being drawn as set forth herein, Reorganized GH shall reserve from the Swept Funds the sum of $750,000 plus accrued unpaid interest, fees and expenses (the "Revolver Reserve"), which shall secure repayment of all amounts due and owing under the Revolver. Once the Revolver has been retired and paid in full, the Revolver Reserve may be used by Reorganized GH as Swept Funds consistent with the uses described in this section.

Any surplus of cash after satisfying the foregoing obligations and conditions shall be deemed "Distributable Cash."

**3. Assets of the GH 409(a) Plans**

On or before the Effective Date, and from time to time thereafter during the term of this Amended Joint Plan, GH or Reorganized GH may cause the GH 409(a) Proceeds to be withdrawn to fund the Amended Joint Plan. The GH 409(a) Proceeds shall be used to fund the Amended Joint Plan and each participant with a vested claim pursuant to the GH 409(a) Plans, which claim is enforceable under applicable non-bankruptcy law, shall have an Allowed General Unsecured Claim in the amount of the value of his or her such claim, which shall be treated under the terms of Class 3.02.B of this Amended Joint Plan.

GH 409(a) Proceeds shall be applied to the following obligations, in this order: a) making required Effective Date payments; b) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; c) making required payments to Bank SNB; and d) establishing, replenishing, or increasing Reserves. Any surplus of 409(a) Proceeds after satisfying the foregoing obligations shall be deemed "Distributable Cash."

**4. New Value Election**

All cash generated from New Value Election offered in section V.A.4.c shall be applied to the following obligations, in this order: a) making required Effective Date payments; b) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; c) making required payments to Bank SNB; and d) establishing, replenishing, or increasing Reserves. Any surplus of cash after

satisfying the foregoing obligations shall be deemed "Distributable Cash."

### 5. Distributable Real Estate Proceeds

From and after the Effective Date, and on such terms as the Holdco Board may find reasonable, and in compliance with the terms of the GH/Bank SNB Compromise, GH may cause the Adjacent Property or the Peoria Property to be sold, the proceeds of which shall be applied to the following obligations, in this order: a) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; b) making required payments to Bank SNB; and c) establishing, replenishing, or increasing Reserves. Any surplus of the proceeds of sale of such real estate after satisfying the foregoing obligations shall be deemed "Distributable Real Estate Proceeds."

### 6. Distributable Net Refinancing Proceeds

To the extent that Holdco or the Reorganized Debtors obtain new financing to satisfy the Restructured SNB Loan, and there are excess proceeds of such a refinancing transaction, such excess proceeds shall be applied to the following obligations, in this order: a) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; and b) establishing, replenishing, or increasing Reserves. Any surplus of the proceeds of such a refinancing transaction after satisfying the foregoing obligations shall be deemed "Distributable Net Refinancing Proceeds."

### 7. Distributable Proceeds of GH Retained Causes of Action

To the extent that GH receives any proceeds of GH Retained Causes of Action, such proceeds shall be applied to the following obligations, in this order: a) payment of attorney fees and costs associated with the prosecution of such GH Retained Causes of Action; b) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; and c) establishing, replenishing, or increasing Reserves. Any surplus of the proceeds of GH Retained Causes of Action after satisfying the foregoing obligations shall be deemed "Distributable Proceeds of GH Retained Causes of Action."

### 8. Enterprise Liquidation Proceeds

To the extent that Holdco or the Reorganized Debtors enter into one or more transactions whereby all or substantially all of the equity or assets of Holdco or either Reorganized Debtor is sold, the proceeds of such transaction or transactions shall be deemed "Enterprise Liquidation Proceeds," and shall be applied to the following obligations, in this order: a) payment of any transactional costs, including attorney fees and costs and commissions; b) satisfaction of any Allowed Secured Claim or other lien on the assets being sold; c) satisfaction of the Restructured SNB Loan (including retirement or replacement of the letter of credit associated with the LOC Claim and payment of any balance then owed on the Revolver); d) satisfaction of any ordinary operating expenses or liabilities not assumed by the buyer and that relate to the assets or equity being sold; e) satisfying ordinary operating expenses of Holdco or either Reorganized Debtor; f) establishing, replenishing, or increasing Reserves; and g) satisfaction of Allowed General Unsecured Claims in Class 3.02.B. Any surplus Enterprise Liquidation Proceeds shall be retained or distributed by Reorganized FHA or Holdco, as applicable, to holders of their membership interests.

## G. Establishment of the FHA Liquidating Trust

On or prior to the Effective Date, FHA shall execute the FHA Trust Agreement to establish the FHA Liquidating Trust, consisting of the FHA Trust Assets. The FHA Trust Agreement shall appoint the FHA Liquidating Trustee, who shall administer the FHA Liquidating Trust for the benefit of the FHA Beneficiaries.

The FHA Liquidating Trust shall be created and administered solely to implement the Amended Joint Plan. The FHA Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the FHA Liquidating Trustee shall operate and maintain the FHA Liquidating Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service. For United States federal and applicable state income tax purposes, the transfer of FHA Trust Assets to the FHA Liquidating Trust pursuant to the Amended Joint Plan shall be reported as a disposition of the FHA Trust Assets directly to and for the benefit of the FHA Beneficiaries immediately followed by a contribution of the FHA Trust Assets by the FHA Beneficiaries to the FHA Liquidating Trust for the benefit of the FHA Beneficiaries. The FHA Beneficiaries will be treated as the grantors and deemed owners of the FHA Liquidating Trust.

At the reasonable discretion of the FHA Liquidating Trustee to facilitate preserving the status of the FHA Liquidating Trust as a "grantor trust," the FHA Liquidating Trustee may establish a separate bank account for the FHA Liquidating Trust to hold the proceeds of the liquidation of FHA Trust Assets, but may as appropriate transfer such funds for the purpose of making distributions to the FHA Beneficiaries or paying necessary expenses of administration of the FHA Liquidating Trustee.

To the full extent permitted by law, all rights of the FHA Estate under Section 365 of the Bankruptcy Code (including without limitation Section 365(f) thereof) are preserved for the benefit of the FHA Beneficiaries, and may be exercised by the FHA Liquidating Trustee with the approval of the Bankruptcy Court.

Pursuant to §§ 1123(a)(5)(B), 1123(b)(3)(B), 1141, and 1145 of the Bankruptcy Code, the Confirmation Order shall authorize the establishment of the FHA Liquidating Trust, the appointment of the FHA Liquidating Trustee, the issuance of the beneficial interests therein, and shall authorize and direct FHA and Holdco to take all actions necessary to consummate the FHA Trust Agreement and to establish the FHA Liquidating Trust, including the transfer of the FHA Trust Assets to the FHA Liquidating Trust. Prior to the Effective Date, the terms and provisions of the FHA Trust Agreement shall be submitted to the Bankruptcy Court by the Plan Proponents and shall be subject to approval of the Bankruptcy Court.

The initial FHA Liquidating Trustee shall be Carolyn Johnson (subject to her consent and the approval of Bank SNB) or such other person as may be appointed by Holdco as of the Effective Date. Holdco shall have authority to appoint a successor FHA Liquidating Trustee should the initial FHA Liquidating Trustee resign or be terminated prior to fully administering the assets of the FHA Liquidating Trust.

The FHA Liquidating Trustee shall take such actions as are required under the FHA Trust Agreement and may make such determinations and take such actions as are permitted thereunder. As soon as practicable after the Effective Date, or following the transfer of the FHA Trust Assets after the Effective Date, the FHA Liquidating Trustee may, if reasonably deemed necessary by the FHA Liquidating Trustee, make a good faith valuation of the FHA Trust Assets, or cause a good faith valuation of the FHA Trust Assets to be made by such professionals as the FHA Liquidating Trustee may, in its sole discretion, retain for such purposes. Such valuation shall be made available from time to time to the extent relevant as reasonably determined by the FHA Liquidating Trustee and shall be used consistently by all parties (including the Reorganized Debtors, the FHA Liquidating Trustee, and the FHA Beneficiaries) for all purposes, including federal and applicable state income tax purposes. Notwithstanding the foregoing, any such valuation shall not be binding upon the FHA Liquidating Trustee with respect to liquidation of assets or any other action taken pursuant to the Plan.

The FHA Liquidating Trustee shall be entitled to compensation for services rendered as set forth in the FHA Trust Agreement. The FHA Liquidating Trustee shall be entitled to reimbursement from the FHA Liquidating Trust for actual and reasonable out-of-pocket expenses incurred, and any dispute over such reimbursement shall be subject to review by the Bankruptcy Court. Except as provided in the FHA Trust Agreement, the FHA Liquidating Trustee shall be entitled to indemnification from the FHA Liquidating Trust for any loss, claims, or damages occasioned by the FHA Liquidating Trustee in the good faith performance of his or her rights, powers and duties hereunder and under the FHA Trust Agreement. Except as provided in the FHA Trust Agreement or applicable law, the FHA Liquidating Trustee will not be liable for any act or omission, except to the extent that the act or omission is determined by a court of competent jurisdiction to be the result of gross negligence, fraud, or willful misconduct (this limitation on liability applies equally to the agents, employees, and professionals acting behalf of the FHA Liquidating Trustee or the FHA Liquidating Trust).

**H.      Appointment of Plan Agent**

On the Effective Date, a Plan Agent shall be appointed to administer the Amended Joint Plan. The Bankruptcy Court shall approve the appointment of the Plan Agent at Confirmation. The identity, qualifications, and affiliations of the Plan Agent will be disclosed prior to Confirmation. The Plan Agent shall serve for the term of the Amended Joint Plan. Upon the Plan Agent's resignation or refusal to act, a replacement Plan Agent shall be designed by the Bankruptcy Court following nomination of one or more candidates by the Reorganized Debtors with notice to the Office of the United States Trustee.

a.      Plan Agent Actions

The Plan Agent shall have the following rights, powers and duties:
1.      To make distributions under the Amended Joint Plan;
2.      To establish a distribution account and any other separate account that the Plan Agent deems reasonably necessary;
3.      To prosecute GH Retained Causes of Action and to determine the terms and conditions of any settlement or dismissal thereof;
4.      To investigate, review, object to, and defend against Claims against the GH Estate, *provided, however*, that the Plan Agent shall have the right, but not the obligation, to

participate in any contested matter relating to or objection or defense of a Tax Priority Claim or action to determine that a claim is non-dischargeable under 11 U.S.C. § 1141(d)(6), the primary responsibility for which shall reside with the Reorganized Debtors, and *provided further*, that Reorganized GH shall be responsible to investigate, review and object to any Claims that are entitled to payment in cash on the Effective Date.

     5.    To receive, review and investigate any periodic reports or certificates of compliance given by the Reorganized Debtors from time to time;

     6.    To hire counsel or other professional advisors as the Plan Agent deems reasonably necessary;

     7.    To prepare such periodic reports to creditors or the Bankruptcy Court of Amended Joint Plan compliance and distributions as the Plan Agent deems reasonably necessary, including the obligation to make quarterly reports pursuant to the United States Trustee Guidelines; and,

     8.    To seek guidance and interpretation from the Bankruptcy Court in connection with the performance of the duties provided for herein.

    b.    <u>Compensation</u>

The Plan Agent shall be entitled to reasonable compensation for services rendered, subject to the approval of the Bankruptcy Court. Such compensation, and any and all fees and expenses incurred by the Plan Agent, shall be payable from the Distributable Cash of the Reorganized Debtors.

## I.    Consummation of the Amended Joint Plan

Upon the satisfaction of all Allowed Claims pursuant to this Amended Joint Plan, the Amended Joint Plan shall be deemed fully consummated. Thereafter, any restrictions placed by this Amended Joint Plan upon distributions to holders of membership interests in Holdco or the Reorganized Debtors, or upon the exercise of voting rights by the holders of such membership interests, shall be of no further force or effect.

## VI.    CLAIMS

### A.    Objections and Deadlines

An objection to a Claim must be filed and served by the deadline for such objections set by order of the Bankruptcy Court. Any party in interest may file an objection to a Claim, but the primary responsibility for objecting to claims shall be with the Plan Agent and the FHA Liquidating Trustee.

### B.    Settlement of Claims

Settlement of any objection to a Claim whereby the resulting Allowed Claim would not exceed $5,000 shall be permitted on the 11th day after notice of the settlement has been provided to the Reorganized Debtors, the settling party, and other persons specifically requesting such notice, and if on such date there is no written objection filed, whereupon such settlement shall be deemed approved. In the event of a written objection to the settlement, the settlement shall be effective upon the entry of a Final Order resolving the objection to the settlement.

## C. Calculation and Payment of Pro Rata Distributions

If the Amended Joint Plan provides for a distribution Pro Rata to holders of Claims in a particular Class or group of Classes, the amount potentially distributable to each holder shall be determined by prorating the payment due among all Allowed Claims and the estimated or reserved value of Disputed Claims. The Plan Agent or the FHA Liquidating Trustee shall make the distributions so calculated to holders of Allowed Claims and shall not make the distributions so calculated to holders of Disputed Claims.

## D. Penalties and Fines

Except as specifically provided by order of the Bankruptcy Court, no distribution shall be made on account of any fine, penalty, exemplary or punitive damages, late charges, or other monetary charges relating to or arising from any default or breach by FHA or GH, and any Claim on account thereof shall be treated hereunder as such and disallowed to the extent of such fine, penalty, exemplary or punitive damages, late charges, or other default-related charge, whether or not an objection is filed to it.

## E. Leases and Executory Contracts

Both FHA and GH are, or may be, a party to and/or beneficiary of several executory contracts relating to the provision of goods and/or services, and unexpired equipment leases as identified in Schedule G as amended of the FHA Bankruptcy and GH Bankruptcy respectively (the "Contracts"). As discussed above, there are some Contracts where neither Debtor is a party; rather, Visionary is the entity which signed the Contract. The Debtors are in the process of analyzing and evaluating which of the Contracts should be assumed and which it should rejected as authorized by the Bankruptcy Code. GH estimates that FHA will have $259,222.37 in Cure Payments due under assumed Contracts on the Effective Date and GH will have $1,755,231 in Cure Payments due under assumed Contracts on the Effective Date. GH is working to reach stipulations with counterparties to the Contracts regarding Cure Payments.

Due to the lack of ability to negotiate contracts related to FHA until after confirmation of the Amended Joint Plan, and because until GH cannot conduct a thorough review of all Contracts of FHA and GH until the Amended Joint Plan has been confirmed, it will not be able to put together a complete list of Contracts it intends to assume until after confirmation of the Amended Joint Plan.

GH will as a condition of the Amended Joint Plan Effective Date provide a list of Contracts that both FHA and GH intend to assume with proposed cure amounts, to which all counter-parties to the contracts will receive notice and have an opportunity to object ("Effective Date Contract Notice"). This will also give Holdco, an opportunity through the Reorganized FHA and Reorganized GH to negotiate cure stipulations over time for the contracts that ultimately are kept. The Effective Date Reserve provides for the full amount of the scheduled cure amounts.

GH is party to a contract with Gilbert Emergency Medicine Specialist, LLC ("GEMS") for the provision of physician coverage for the emergency department. GH and GEMS have discussed the need for various revisions to the agreement, including changes in the term and the addition of a

potential payment by GH to GEMS in the event that GEMS revenues are not sufficient to cover the costs of providing the coverage services.

GH has drafted the proposed revisions to the agreement and provided them to GEMS. GEMS has provided preliminary comments, some of which GH has incorporated into the draft but some of which the hospital is unable to make or has made recommendations for alternative language. GEMS has not yet responded to this latest draft. GH anticipates that it will be able to finalize the agreement shortly. GH shall provide a copy of the proposed amended GEMS Contract as part of a Plan Supplement.

The Effective Date Contract List will designate the Debtors' intentions regarding all unexpired leases and executory contracts that will be assumed including the GEMS contracts and Alpha Health contracts, to the extent they are not assumed prior to the date of the Effective Date Contract List. As discussed in the Amended Joint Plan, any contract not specifically assumed through the Bankruptcy process or as part of the Effective Date Contract List shall be deemed rejected.

Both Debtors lease the real property on which their respective hospitals conduct operations from an MPT entity. Both Debtors have entered into Bankruptcy-Court-approved stipulations to assume their respective leases with MPT FHA and MPT GH (respectively, at FHA DE 494 and GH DE 531) Nothing in this Amended Joint Plan is intended to alter the terms of the assumption agreements between the Debtors and the MPT entities.

**Any Claim arising from rejection of an unexpired lease or executory contract must be asserted in a proof of claim filed with the Court in the appropriate case within 28 days after the Confirmation Date.**

## VII.   OTHER PROVISIONS

### A.   Conditions Precedent to Effective Date

The Amended Joint Plan shall not become effective unless and until the following conditions have been satisfied or waived by the Plan Proponents:

(a)   The Confirmation Order shall have been entered, and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(b)   The Confirmation Order shall authorize the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to consummate the Amended Joint Plan and to enter into, implement, and effectuate the contracts, instruments, releases, leases, and other agreements necessary to consummate the Amended Joint Plan;

(c)   The statutory fees owing to the United States Trustee shall have been paid in full;

(d)   All exhibits to the Plan, including those to be contained in a supplement, shall be in a form satisfactory to the Plan Proponents;

(e)   The amended organizational documents and operating agreements of Holdco and the Reorganized Debtors, in form and substance satisfactory to the Plan Proponents, shall have been filed, effected, or executed, as required;

(f)   All other actions, authorizations, consents, and regulatory approvals (if any)

necessary to implement the provisions of the Plan shall have been obtained, effected, or executed in a manner acceptable to the Plan Proponents, or, if waivable, waived by the Person or Persons entitled to the benefit thereof;

(g)     The FHA Trust Agreement, in form and substance satisfactory to the Plan Proponents, shall have been entered into by all parties thereto, and the FHA Liquidating Trust shall have been created thereunder;

(h)     The new equity interests in Holdco and the Reorganized Debtors shall have been duly authorized and, with the occurrence of the Effective Date, shall be validly issued and outstanding; and

(i)     The Reorganized Debtors shall have sufficient funds on hand with which to pay all Allowed Claims required to be paid on the Effective Date, except to the extent that Claimants have agreed to less favorable treatment.

## B.     Retention of Jurisdiction

The Bankruptcy Court will retain jurisdiction to insure that the purposes and intent of the Amended Joint Plan are carried out. Without limiting the generality of the foregoing, the Bankruptcy Court will retain jurisdiction, until the Plan is fully consummated, for the following purposes:

### 1.     Claims Determination

The Bankruptcy Court shall retain jurisdiction to determine the classification, allowance, subordination, and liquidation of Claims (including Administrative Claims) and Interests, and the reexamination of Allowed Claims for purposes of determining acceptances at the time of Confirmation, and the determination of such objections as may be filed. The failure by the Debtors to object to or to examine any Claim for the purpose of determining acceptance of the Amended Joint Plan shall not be deemed to be a waiver of any right to object to or reexamine any Claim in whole or in part.

### 2.     Estate Assets

The Bankruptcy Court shall retain jurisdiction to determine all questions and disputes regarding title to the assets of the Estates, and all causes of action, controversies, disputes, or conflicts, known or unknown, whether or not subject to action pending as of the Confirmation Date, between Reorganized FHA or Reorganized GH and any other Person, including but not limited to such Reorganized Debtor's right to recover assets, avoid transfers, recover fraudulent transfers, offset claims, recover money or property from any Person, or return assets which were or are the property of the Estates pursuant to the provisions of the Bankruptcy Code.

### 3.     Executory Contracts

The Bankruptcy Court may determine all matters relating to the assumption, assignment, or rejection of executory contracts and unexpired leases, including claims for damages from the rejection of any executory contract or unexpired lease.

### 4.     Unliquidated Claims

The Bankruptcy Court may liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any Contingent, Disputed, or Unliquidated Claims.

### 5. Plan Corrections

The Bankruptcy Court may authorize the correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Amended Joint Plan, the Confirmation Order, or any and all documents executed or to be executed in connection therewith, as may be necessary to carry out the purposes and the intent of the Amended Joint Plan, on such notice as the Bankruptcy Court shall determine to be appropriate.

### 6. Plan Modifications

The Bankruptcy Court shall have jurisdiction to authorize a modification of the Amended Joint Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code.

### 7. Adversary Proceedings

The Bankruptcy Court may adjudicate all claims, controversies, contested matters, or adversary proceedings arising out of any purchases, sales, agreements, or obligations made or undertaken by and between a Debtor and any other Person during the pendency of the FHA Bankruptcy or the GH Bankruptcy, and such jurisdiction shall continue after the closing of these cases.

### 8. Plan Interpretation

The Bankruptcy Court may enforce and interpret the terms and conditions of the Amended Joint Plan and all controversies and disputes that may arise in connection with the enforcement, interpretation, or consummation of the Amended Joint Plan.

### 9. Deadlines

The Bankruptcy Court may shorten or extend, for cause, the time fixed for doing any act or thing under the Amended Joint Plan, on such notice as the Bankruptcy Court shall determine to be appropriate.

### 10. Enforcement of Discharge; Other Injunctive Relief

The Bankruptcy Court may enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Reorganized Debtors and the FHA Liquidating Trustee, and to impose such limitations, restrictions, terms, and conditions on such title, rights, and powers as the Bankruptcy Court may deem appropriate.

### 11. Additional Matters

The Bankruptcy Court may determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code.

### 12. Case Closing

The Bankruptcy Court may enter a final decree closing the FHA Bankruptcy or the GH Bankruptcy at any time after substantial consummation of the Amended Joint Plan. Unless otherwise ordered by the Bankruptcy Court, the closing of the case shall not affect the Bankruptcy Court's jurisdiction of any adversary proceeding or contested matter and shall not limit the Bankruptcy Court's reserved jurisdiction under this Amended Joint Plan or under the Bankruptcy Code or other applicable statute.

**C.      Modification of the Plan**

In addition to the modification rights under Section 1127 of the Bankruptcy Code, the Plan Proponents may propose amendments to, or modifications of, this Amended Joint Plan at any time prior to entry of the Confirmation Order, with leave of the Bankruptcy Court, upon such notice as may be prescribed by the Bankruptcy Court. After entry of the Confirmation Order, the Plan Proponents may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of creditors, cure any omission, correct any defect, or reconcile any inconsistencies in the Amended Joint Plan, the Confirmation Order, or any and all documents executed or to be executed in accordance therewith, in such manner as may be necessary to carry out the purposes and intent of this Amended Joint Plan.

**D.      Conditions to Confirmation and Occurrence of the Effective Date**

**1.      Confirmation**

It shall be a condition to confirmation of this Amended Joint Plan that the Amended Joint Plan be confirmed in both the Chapter 11 Cases of GH and FHA.

**2.      Effective Date**

Notwithstanding satisfaction of the condition specified above, it shall be a condition to the occurrence of the Effective Date of the Amended Joint Plan in both the GH and FHA Chapter 11 Cases that GH shall be satisfied in its discretion with the results of its legal, accounting, and regulatory due diligence investigations. The parties shall use their commercially reasonable efforts to take or cause to be taken all such actions required to consummate the transactions contemplated hereby including, without limitation, such actions as may be necessary to obtain, prior to the occurrence of the Effective Date, all necessary governmental o other third party approvals and consents required to be obtained by each party in connection with the consummation of the transactions contemplated by this Amended Joint Plan.

**E.      Effect of Confirmation**

**1.      Discharge of Claims**

Except as otherwise provided in the Amended Joint Plan or the Confirmation Order, entry of the Confirmation Order acts as a discharge, effective as of the Effective Date, of any and all debts, obligations, liabilities, Claims, and Interests, whether contingent or otherwise, of GH and FHA that arose at any time before the Effective Date, pursuant to Section 1141(d)(1) of the Bankruptcy Code. The discharge of GH and FHA shall be effective as to each Claim and Interest, regardless of whether a proof thereof was filed, whether or not the Claim or Interest is Allowed, or whether the holder thereof voted to accept the Amended Joint Plan.

**2.      Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided in the Amended Joint Plan or the Confirmation Order, entry of the Confirmation Order shall vest in the applicable Reorganized Debtor, as of the Effective Date, all assets acquired or retained by it pursuant to this Amended Joint Plan, free and clear of all liens, claims, and encumbrances.

### 3. Plan-Based Injunction

From and after the Effective Date, all Claims against and Interests in the Debtors shall be treated under the terms of this Amended Joint Plan. The Holder of any Claim that is non-dischargeable under 11 U.S.C. § 1141(d)(6) shall not have any right to collect or enforce any right or remedy against the Reorganized Debtors or assets of the Reorganized Debtors during the term of the Amended Joint Plan. Specifically, during the term of the Amended Joint Plan, distributions on account of Allowed Claims are limited to the provisions of the Amended Joint Plan.

### 4. Exculpation of Plan Proponents and Others

Neither the Debtors, the Reorganized Debtors, Holdco, the FHA Committee, the GH Committee, Bank SNB, the FHA Liquidating Trustee, the Plan Agent, nor any of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates, and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or an Interest or any other Person for any act or omission in connection with, related to, or arising out of, the FHA Bankruptcy, the GH Bankruptcy, the Amended Joint Plan, the pursuit of confirmation of the Amended Joint Plan, the consummation of the Amended Joint Plan, the administration of the Amended Joint Plan, or the property to be distributed under the Amended Joint Plan, except for (i) any express contractual obligation owing by any such Person or (ii) willful misconduct or gross negligence, as determined by a Final Order, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Amended Joint Plan; *provided, however,* that nothing in the Amended Joint Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to this Amended Joint Plan.

## F. Releases

### 1. Debtors' Release of Bank SNB

Except with respect to Bank SNB's obligations under this Amended Joint Plan, on the Effective Date Bank SNB and its present and former directors, shareholders, officers, employees, agents, representatives, attorneys, successors, assigns, and affiliates (collectively, the "Bank Released Parties") will be fully released and discharged from any and all actions, causes of action, claims, debts, damages, demands, liabilities, obligations, suits, and expenses of any and every character, now known or unknown, which any of the Debtor Released Parties, as defined below, have asserted or could yet assert against the Bank Released Parties based on or related to any event or transaction occurring or existing prior to entry of the Confirmation Order.

### 2. Bank SNB's Release of Debtors

Except with respect to the obligations of the Debtors, the Reorganized Debtors, Holdco, and GH-41 (the "Debtor Released Parties") under this Amended Joint Plan, on the Effective Date the Debtor Released Parties and their present and former directors, shareholders, officers, employees, agents, representatives, attorneys, successors, assigns, and affiliates will be fully released and discharged from any and all actions, causes of action claims, debts, damages, demands, liabilities, obligations, suits, judgments, executions, and expenses of any and every character, now known or unknown, which any of the Bank Released Parties have or could assert against the Debtor Released

Parties based on or related to any event or transaction occurring or existing prior to entry of the Confirmation Order.

### G.   Miscellaneous

#### 1.   Time of the Essence

Time is of the essence in the interpretation and enforcement of this Amended Joint Plan. Without limiting the generality of such statement, the rights provided hereunder are intended to expire immediately upon the expiration of the period provided for herein, and are intended not to be extended under Sections 362 or 105 of the Bankruptcy Code for any reason.

#### 2.   Headings

The headings used in the Amended Joint Plan are inserted for convenience only and shall not affect the interpretation of the Amended Joint Plan.

#### 3.   Exemption from Transfer Taxes

Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Amended Joint Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Amended Joint Plan, shall not be subject to, or give rise to, any stamp, real estate transfer, mortgage recording, or other similar tax.

#### 4.   Notices

All notices, requests, or demands for payment provided for in the Amended Joint Plan shall be in writing and shall be deemed to have been delivered when personally delivered by hand, or deposited in any general or branch post office of the United States Postal Service, or received by telecopy.   Notices, requests, and demands for payment prior to the Effective Date shall be addressed to the attention of the Plan Proponents and sent postage prepaid or delivered to:

Gilbert Hospital, LLC                          Bank SNB
c/o Bryan Hargis, CEO                      c/o Rick Thompson, Senior Vice President
5656 South Power Road                      5950 Berkshire Lane, Suite 350
Gilbert, AZ 85295                              Dallas, Texas 75225

With copies to:                                  With copies to:

Daniel E. Garrison, Esq.                      Bryce A. Suzuki, Esq.
Jessica Kenney Bonteque, Esq.            Kyle S. Hirsch, Esq.
Andante Law Group, PLLC                  Bryan Cave LLP
4110 North Scottsdale Road, Suite 330   Two North Central Avenue, Suite 2200
Scottsdale, Arizona 85251                    Phoenix, Arizona 85004-4406

On or after the Effective Date, such notices, requests, and demands for payment shall be addressed the attention of the Plan Agent or Liquidating Trustee as provided in the Confirmation Order. The addresses provided for above may be changed, at any time and from time to time, by a notice filed with the Bankruptcy Court in these proceedings.

1

**5.      Confirmation without Acceptance of all Classes**

2          GH and Bank SNB will request the Bankruptcy Court to confirm the Amended Joint Plan
notwithstanding the rejection of the Amended Joint Plan by an impaired Class, pursuant to the
3      provisions of 11 U.S.C. § 1129(b) of the Bankruptcy Code.

4          RESPECTFULLY SUBMITTED this 11th day of March, 2015.

5

6                                             **ANDANTE LAW GROUP, PLLC**

7

8                                             By: */s/ Daniel E. Garrison (021495)*
                                                  Daniel E. Garrison
9                                                  Jessica Kenney Bonteque
                                                  *Attorneys for Gilbert Hospital, LLC*
10

11                                             **BRYAN CAVE LLP**

12

13

14                                             By: */s/ Bryce A. Suzuki (022721)*
                                                  Bryce A. Suzuki
15                                                  Kyle S. Hirsch
                                                  *Attorneys for Bank SNB*
16

17

18

19

20

21

22

23

24

25

26

27

28