1  courtdocs@dickinsonwright.com
2  Carolyn J. Johnsen (#011894)
   DICKINSON WRIGHT PLLC
3  1850 N. Central Ave., Ste. 1400
   Phoenix, Arizona 85004
4  Phone: (602) 285-5000
   Fax: (602) 285-5100
5  cjjohnsen@dickinsonwright.com
   *Attorneys for the Official Committee of Unsecured Creditors*
6

7  **IN THE UNITED STATES BANKRUPTCY COURT**

8  **FOR THE DISTRICT OF ARIZONA**

9  In re:                                        Chapter 11 Proceedings

10 FLORENCE       HOSPITAL      AT       Case No. 4:13-bk-03201-BMW
   ANTHEM, LLC,
11

12                    Debtor.

13

14        **OFFICIAL COMMITTEE OF UNSECURED**
15        **CREDITORS' CHAPTER 11 PLAN OF**
16        **REORGANIZATION DATED MAY 18, 2015**
17
18
19
20
21
22
23
24
25
26

## INTRODUCTION

The Official Committee of Unsecured Creditors (the "Committee") submits this Plan of Reorganization, as it may be amended from time to time (the "Plan"), to the Court and creditors of the Debtor's Estate, pursuant to Bankruptcy Code § 1121(a). The Committee is the "Plan Proponent" of the Plan within the meaning of Bankruptcy Code § 1129. Reference is made to the "Disclosure Statement in Support of Official Committee of Unsecured Creditors' Chapter 11 Plan of Reorganization" filed contemporaneously herewith (the "Disclosure Statement"), for a discussion of the Debtor's history, business, property, results of operations and projections for future operations, and for a summary and analysis of the Plan and related matters. All holders of Claims against and equity Interests in the Debtor are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

## DEFINITIONS

**Defined Terms**. The terms used in this Plan have the same meaning as those defined in Exhibit B to the Disclosure Statement or in the Bankruptcy Code, Rules, or otherwise defined in the Disclosure Statement or Plan.

**Undefined Terms**. Terms and phrases, whether capitalized or not, that are used and not defined herein, but are defined by the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Terms and phrases, whether capitalized or not, not defined herein and not defined by the Bankruptcy Code, but which have been defined by motions and orders filed in this Chapter 11 case have the meaning ascribed to them in such motions and orders.

**Rules of Interpretation**. For purposes of this Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that it shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing

document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Articles, Appendices, Schedules, and Exhibits are to the Sections, Articles, Appendices, Schedules, and Exhibits of or to the Plan; (d) the words "herein" or "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) the headings and captions used in this Plan are for convenience and reference only and are not intended to be a part of or affect the interpretation of the Plan and shall not limit or otherwise affect the provisions hereof; (f) words denoting the singular number shall include the plural number and vice versa; (g) words denoting one gender shall include the other gender; and (h) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**Computation of Time**. In computing any period of time prescribed by or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

# ARTICLE I
## CLASSIFICATION OF CREDITORS

**1.1.** **Class 1—Allowed Administrative Expenses**

Allowed Administrative Claims will be paid as follows:

**1A** Ordinary course of business claims including those amounts owed to ordinary course professionals will be paid as their claims mature;

**1B** All other Allowed Administrative Claimants including professional fees will receive on the Effective Date or as allowed, their pro rata share of $2 million in cash. The remaining amounts owed to Allowed Administrative Creditors shall be paid in full plus 1.5 percent (l.5%) interest in quarterly installments over a period of 18 months commencing on the first day of the second quarter after the Effective Date. In addition, Allowed Administrative Creditors will be allocated 15 percent (15%) of the Series A common stock ("**Stock**") in the Reorganized Debtor to be distributed pro rata as per their Allowed Claims.

Allowed Administrative Creditors in Class 1B may elect to receive Stock instead of any cash distributions based on an $8 million valuation. The cash distribution will be adjusted accordingly. In the event the Reorganized Debtor pays Allowed Claimants in Class 1B and Class 3 described below within 12 months of the Effective Date, an additional 20 percent (20%) of the Stock will be issued to the CEO, Arthur Doloresco and all allocations will be diluted accordingly.

Class 1 is impaired and entitled to vote on the Plan.

### 1.2.   Class 2 – Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or treatment is ordered by the Bankruptcy Court, in full and final satisfaction, each holder shall be treated in accordance with the terms set forth in Bankruptcy Code section 1129(a)(9)(C).   The Debtor believes Priority Tax Claims may consist of personal property taxes of approximately $4,000. Class 2 is not impaired, will not be solicited, and is not entitled to vote on the Plan.

### 1.3.   Class (3) – General Unsecured Creditors

Class 3 consists of the Allowed Unsecured Claims of general unsecured creditors not otherwise classified.  Allowed Unsecured Creditors in this Class will be paid in full plus 6.0 percent (6%) interest in quarterly installments over a period of 18 months commencing on the first day of the second quarter after the Effective Date.  In addition, Allowed Unsecured Creditors will be allocated 30 percent (30%) of the Series A common stock ("**Stock**") in the Reorganized Debtor to be distributed pro rate as per their Allowed Claims. Allowed Claimants in this Class may elect to receive Stock instead of any cash distributions based on an $8 million valuation. The cash distribution will be adjusted accordingly.  In the event the Reorganized Debtor pays Allowed Claimants in this Class and Class 1B (described above)

-4-

within 12 months of the Effective Date, an additional 20 percent (20%) of the Stock will be issued to the CEO, Arthur Doloresco and all allocations will be diluted accordingly.

Class 3 is impaired and entitled to vote on the Plan.

### 1.4.    Class 4 – Bank SNB

Class 4 consists of the Allowed Secured Claim of Bank SNB which claim is believed to be $9,800,000.   Bank SNB's debt will be amortized over 15 years at an interest rate of 6 percent (6%) per annum.  Principal and interest payments will be made monthly commencing on the first day of the second month after the Effective Bank SNB will retain its lien on all assets of the Reorganized Debtor. The Letter of Credit will remain in place.   The GH Guarantee will remain in place. In addition to the above, on the Effective Date, Class 4 will receive 5 percent (5%) of the Stock in the Reorganized Debtor.   Any defaults will be strictly payment defaults which may be cured with 15-day notice.   Other terms will be generally consistent with the current loan documents. Class 4 is impaired and entitled to vote on the Plan.

### 1.5.    Class 5 – Allowed Unsecured Claims of Insiders

Class 5 consists of the Allowed Unsecured Claim, if any, of Insiders including Gilbert Hospital, the Indemnity Claims and Dr. Johns.  Allowed Creditors in this Class will receive a pro rata share of 30 percent (30%)  of the Stock. This Class is impaired and entitled to vote on the Plan.

### 1.6.    Class (6) – Covidien

Class (6) consists of the Allowed Secured Claim of Covidien, in the approximate amount of $4,324, secured by a lien on certain equipment used by FHA in connection with its operations. Covidien will retain its lien and will receive $400.00 on the Effective date, which amount will be applied to the principal balance of Covidien's Allowed Secured Claim. The remainder of the claim will paid in full in equal quarterly installments of principal and

interest, accruing at the rate of 6% per annum, over three (3) years, commencing on the first day of the second month after the Effective Date. Reorganized FHA will have the right, in its sole and absolute discretion, to pre-pay the full amount of Covidien's Allowed Secured Claim at any time without penalty. This Class is impaired and entitled to vote on the Plan.

## 1.7. Class (7) – Dr. Johns

Class 7 consists of the allowed secured claim of Dr. Johns. The Committee believes that senior lien(s) fully encumber the assets that secure the Claim of Dr. Johns As such, the junior lien of Dr. Johns has no value. Therefore, Dr. Johns' Claim against FHA shall be allowed in the amount of $100,000 and shall be treated in Class 5. This Class is impaired and is entitled to vote on the Plan.

## 1.8. Class 8 – Allowed Unsecured Claim of Glaser

Class 8 consists of the Allowed Unsecured Claim of Glaser. The Debtor has turned over the defense and payment of Glaser's claim against the Debtor to the Debtor's insurance company and has allowed, or will allow, Glaser to pursue recovery of his claims against the insurance company. To the extent the Debtor is found liable with respect to Glaser's clams against the Debtor, the Debtor will pay the deductible payable by the Debtor under its insurance policy to Glaser in full and final satisfaction of any and all claims that Glaser has or may have against the Debtor. This Class is impaired and entitled to vote on the Plan.

## 1.9. Class 9 – Equity Interests

Class 9 consists of the equity Interests in the Debtor. These Interests will be cancelled on the Effective Date.

**ARTICLE II**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

## 2.1. Overview of the Implementation of the Plan

The Debtor will emerge as a C Corporation. Its sole director will be the Creditor Trust described below. The Trustee of the Creditor Trust will serve as the Chairman and Secretary

-6-

of the Board. The Articles of Incorporation and By-laws will be provided in a "**Plan Supplement**" to be filed 10 days prior to the first hearing on the Committee's Disclosure Statement.

**On the Effective Date**:

1. The Reorganized Debtor will create the Creditor Trust and will transfer to it $2 million in cash or such adjusted amount depending on a creditor's election of equity and all Causes of Action including Avoidance Actions.

2. The cash will be utilized to pay pro rata Allowed Administrative Creditors on the Effective Date or as allowed, with sufficient reserve to pay disputed claims. The remaining amounts owed to Allowed Administrative Creditors shall be paid in full plus 1.5 percent (l.5%) interest in quarterly installments over a period of 18 months commencing on the first day of the second quarter after the Effective Date. In addition, Allowed Administrative Creditors in Class 1B will be allocated 15 percent (15%) of the Series A common stock ("**Stock**") in the Reorganized Debtor.

3. Allowed Unsecured Creditors will be paid in full plus 6.0 percent (6%) interest in quarterly installments over a period of 18 months commencing on the first day of the second quarter after the Effective Date. In addition, Allowed Unsecured Creditors will be allocated 30 percent (30%) of the Series A common stock ("**Stock**") in the Reorganized Debtor.

4. Allowed Claimants in Classes 1B and 3 may elect to receive Stock instead of any cash distributions based on an $8 million valuation. The cash distribution will be adjusted accordingly.

5. Twenty percent (20%) of the Stock will be issue to the CEO Mr. Delaresco and he may apportion such issuance to other managers in his sole discretion.

6.    In the event the Reorganized Debtor pays Allowed Claimants in Classes 1 and 3 within 12 months of the Effective Date, an additional 20 percent (20%) of the Stock will be issued to the CEO and all allocations will be diluted accordingly.

7.    The Articles of Incorporation and By-laws for the Reorganized Debtor will be executed and Stock will be issued in the following percentages:

- 75.0 percent (75%) to the Creditor Trust-- to be held for the benefit of Class 1 Administrative Creditors (15%), Class 3 General Unsecured Creditors (30%) and Class 5 Insiders (30%).

- 20.0 percent (20%) to the CEO and other managers as selected solely by the CEO.

- 5.0 percent (5%) to Class 3 Bank SNB.

**2.2.    <u>Continued Corporate Existence</u>**

After the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules. After the Effective Date, it may hire and pay professionals and consultants without Court approval.

**2.3.    <u>Management</u>**

On the Effective Date, Mr. Delaresco will be appointed as Chief Executive Officer and Patrick Clune will be appointed as Chief Financial Officer.  They will serve in accordance with applicable corporate documents of the Reorganized Debtor.   As described above, Mr. Delaresco has been operating FHA without an employment contract and has received compensation at a significantly below market rate.  Yet, his efforts have increased EBITDA for the company substantially. As an incentive to retain the expertise of Mr. Delaresco and thereby enhance feasibility, noting that Mr. Delaresco has received other lucrative job offers, he will receive on the Effective Date 20 percent (20%) of the Stock in the Reorganized Debtor.  He may allocate a portion of these shares to other managers in his sole discretion.

In the event the Reorganized Debtor pays Allowed Claimants in Classes 1B and 3 within 12 months of the Effective Date, an additional 20 percent (20%) of the Stock will be issued to Mr. Delaresco and all allocations will be diluted accordingly. The Reorganized Debtor and Mr. Delaresco will enter into a five-year market terms contract with normal benefits. This agreement will be included in the Plan Supplement. The Reorganized Debtor will obtain a key-man life insurance policy adequate to cover Classes 1 and 3 for a period of 18 months.

## 2.4. **Retention of Provider Numbers**

As of and after the Effective Date, the Hospital, under the ownership of the Reorganized Debtor, shall continue to be qualified for participation in the Medicare program, holding the same Medicare provider contract as the Hospital does currently, under the same terms and conditions and with all of the applicable payment statuses and attributes thereof.

## 2.5. **Creation of Creditor Trust and Appointment of Trustee**

On the Effective Date, a Creditor Trust will be created pursuant to the Creditor Trust Agreement (to be filed in the Plan Supplement) and it will hold the equity interests designated for creditors and facilitate certain creditor distributions required by the Plan. The Initial Creditor Trust Trustee ("Plan Trustee") will be David Gonzales who has served as the Debtor's financial advisor. Mr. Gonzales will be deemed appointed on the Effective Date, without further motion, application, notice, hearing or other order of the Court. Mr. Gonzales will be compensated as set forth in the Creditor Trust Agreement.

As more fully described in the Creditor Trust Agreement, the Trustee shall hold the 75 percent (75%) percent of the shares of the Reorganized Debtor for the benefit of Classes 1B, 3 and 5. No shares will be issued to individual creditors until such time as the creditor's Claim is allowed and until such time as the time for the additional Stock distribution to Mr. Delaresco has passed and all reallocations have been made.

The Reorganized Debtor will remit to the Creditor Trust $2 million in cash and will further remit sufficient funds to the Creditor Trust to enable the Trustee to make quarterly payment to allowed claimants in Classes 1B and 3 and to fund the operations of the Creditor Trust. Payments to all other classes will be made by the Reorganized Debtor.

The Creditor Trust may employ, without order of the Court, such counsel, advisors and other professionals selected by the Plan Trustee that are reasonably required to perform the Plan Trustee's responsibilities under the Plan. The Creditor Trust's professionals shall be compensated as agreed to by the Plan Trustee, without further motion, application notice, or other order of the Court. The fees and expenses of the Creditor Trust's professionals shall be paid by the Reorganized Debtor.

## 2.6. Plan Projections

The Reorganized Debtor will operate the Hospital with independent management and complete separation from Gilbert Hospital in all capacities including IT and any administrative functions. Plan projections will be provided in the Plan Supplement. The following is noted however. Through the reorganization efforts of current management, EBITDA for fiscal year end 2014 equaled $2,959,000 and for the first quarter of 2015, equaled $965,000.   EBITDA of $4-6 million over the term of the contemplated plan payments.  If EBITDA remains in the already achieved $4 million range, this will cover contemplated Plan payments by a factor of 1.5.  EBITDA does not need to increase from the current level to make contemplated payments and for clarity, it could in fact drop by 50 percent (50%) and still support payments.  The projections will support and demonstrate that all Plan payments can be made in accordance with the provisions of the Plan.

## 2.7. Effectuating Documents; Further Transactions

Upon Confirmation, the Debtor and the Reorganized Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements

-10-

or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**2.8.** **Exemption from Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, the creation or transfer of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, and executed in connection with the liquidation of assets shall not be subject to any stamp tax, real estate tax or similar tax.

**2.9.** **Exemption from Securities Laws**

The issuance of the Reorganized Debtor Interests, and all other instruments, certificates, and other documents required to be issued or distributed pursuant to the Plan, (a) shall be authorized under Bankruptcy Code § 1145 as of the Effective Date without further act of action, and (b) shall be exempt pursuant to Bankruptcy Code § 1145 from registration under the Securities Act of 1933, as amended (and all rules and regulations promulgated thereunder), and under any state or local law (and all rules and regulations promulgated thereunder) requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security.

## ARTICLE III
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Subject to the approval of the Bankruptcy Court, the Debtor has the power to assume or reject an unexpired lease or a contract that is deemed executory by the fact that performance is due by both parties to the contract. That is to say, the lease or contract can be accepted as written and the parties continue as if the bankruptcy never occurred. In such case the Debtor must cure any arrearages ("**Cure**") and give the counter party adequate assurance of performance. Conversely, the lease or contract can be rejected, in which case the Debtor is

-11-

deemed to be in breach of the agreement, and practically speaking, the parties' obligations cease. The counter party may have a claim for damages as a consequence of the rejection.

In this case, the Debtor will assume as of the Effective Date the contracts and unexpired leases identified in the Plan Supplement (the "**Assumed Contracts**"). The Cure associated with each Assumed Contract will be identified and all other executory contracts and leases not listed shall be deemed rejected on Effective Date (the "**Rejected Contract**s") unless earlier rejected by Bankruptcy Court order. The Committee reserves the right to amend the list at any time prior to the Effective Date (a) to delete any executory contract or unexpired lease and provide for its rejection, or (b) to add any executory contract or unexpired lease and provide for its assumption under the Plan. Counter parties to those agreements will receive notice and each shall have fourteen days (14) from the date of the notice to file with the Bankruptcy Court a written objection to its treatment and its Cure if applicable. Failure to timely object will be deemed consent to the treatment and Cure. If a timely written objection is filed, a hearing for the resolution of the counter party's objection will be requested. .

Unless it has done so previously, each counter party to a rejected lease or contract shall file on or before fourteen days after the Effective Date a proof of claim for any rejection damages. Failure to timely file such proof of claim will result in the establishment of the claim at zero dollars (-0-). The Plan Trustee reserves all rights to object to any proofs of claim.

**ARTICLE IV**
**CLAIMS, DISTRIBUTIONS, AND CLAIMS OBJECTIONS**

**4.1.** **Deadline for Applications for Administrative Expenses**

Applications for Administrative Claims shall be filed no later than 30 days after the Effective Date. If Administrative Claims are not timely filed in accordance with the Plan, they will be forever barred and may not be asserted in any manner; provided, however, that

no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims for expenses incurred in the ordinary course of business, unless a dispute exists as to those expenses, or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on that expense.

**4.2.** **Filing of Objections**

The Plan Trustee shall have the exclusive right to file objections to Claims and the exclusive right to settle or withdraw those objections with respect to any claims totaling $100,000 or less. With respect to claims of larger amounts, the Plan Trustee shall seek approval of the Court upon notice to those creditors or parties entering a notice of appearance in the case. The holder of a Claim to which an objection has been filed will be required to file with the Bankruptcy Court a response setting forth its Claim with specificity. The Plan Trustee will request a hearing on any timely filed responses. Claims objections must be filed within ninety (90) days after the Effective Date.

**4.3.** **Plan Distributions**

Distributions to Creditors will be made in accordance with the Plan and the Creditor Trust Agreement. No distributions will be made to any claimant unless that claimant has an Allowed Claim or Allowed Interest.

**4.4.** **Amendment of Claims**

A Claim may be amended prior to the Effective Date only as agreed upon by the Plan Trustee and the holder of the Claim or as otherwise permitted by the Bankruptcy Court and Bankruptcy Rules. After the Effective Date, a Claim may be amended to decrease, but not to increase, the amount thereof.

Case 4:13-bk-03201-BMW   Doc 858   Filed 05/18/15   Entered 05/18/15 17:49:46   Desc
Main Document    Page 13 of 24

**4.5.** **Full and Final Satisfaction**

All payments and distributions under the Plan shall be in full and final satisfaction, settlement, release, and discharge of all Claims and Interests.

### ARTICLE V
### RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Chapter 11 Case for, among other things, the following purposes:

a)     To hear and determine all matters with respect to the assumption or rejection of executory contracts or unexpired leases and the allowance of cure amounts and Claims resulting therefrom;

b)     To hear and determine any motion, adversary proceeding, application, contested matter or other litigated matter pending on or commenced after the Confirmation Date;

c)     To hear and determine all matters with respect to the allowance, disallowance, liquidation, classification, priority or estimation of any Claim;

d)     To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

e)     To hear and determine all applications for compensation and reimbursement of Professional Fee Claims;

f)     To hear and determine any application to modify the Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, this Disclosure Statement or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

-14-

g)  To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated by the Plan or any agreement, instrument or other document governing or relating to any of the foregoing;

h)  To issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

i)  To issue orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan;

j)  To enter, implement or enforce orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

k)  To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of tax under Section 505(b) of the Bankruptcy Code);

l)  To hear and determine any other matters related to the Plan and not inconsistent with the Bankruptcy Code;

m)  To determine any other matters that may arise in connection with or are related to the Plan, this Disclosure Statement, the Confirmation Order, any of the Plan documents or any other contract, instrument, release or other agreement or document related to the Plan and this Disclosure Statement;

n)  To recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

o)  To hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge, including any dispute relating to any liability arising out of the

Case 4:13-bk-03201-BMW    Doc 858    Filed 05/18/15    Entered 05/18/15 17:49:46    Desc
Main Document    Page 15 of 24

termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

p)     To hear and determine any rights, claims or Causes of Action held by or accruing to the Debtor or the Reorganized Debtor pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

q)     To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Chapter 11 Case with respect to any Person;

r)     To hear and determine any disputes arising in connection with the interpretation, implementation or enforcement of any post-petition agreements;

s)     To hear any other matter not inconsistent with the Bankruptcy Code; and

t)     To enter a final decree closing the Chapter 11 Case.

## ARTICLE VI
## EFFECT OF CONFIRMATION

**6.1.    <u>Vesting of Assets</u>**

Upon the Effective Date, pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, all Property of the Debtor and of the Estate, (including the Debtor's and the hospital's right and privileges), except for the Effective Date cash payment to the Creditor Trust and the Causes of Action which shall vest in the Creditor Trust, shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise expressly provided in the Plan. All Liens, Claims, encumbrances, charges, and other interests shall be deemed fully released and discharged as of the Effective Date, except as otherwise provided in the Plan.  As of the Effective Date, the Reorganized Debtor may operate the business and may use, acquire, and dispose of Property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the

-16-

Bankruptcy Rules and in all respects as if there was no pending cases under any chapter or provision of the Bankruptcy Code.

Upon the Effective Date, the Effective Date cash and Causes of Action shall vest in the Creditor Trust in accordance with the Plan and Creditor Trust Agreement free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise expressly provided in the Plan and the Creditor Trust Agreement. All Liens, Claims, encumbrances, charges, and other interests shall be deemed fully released and discharges as of the Effective Date except as otherwise provided in the Plan and the Plan Trust Agreement.

**6.2.** **Preservation of Causes of Action**

    **A.** **Claims against Gilbert Hospital**

        **1.** **Preference Payments**

On April 30, 2012 and June 6, 2012, respectively, FHA made transfers of $1,000,000 and $1,216,748.14 to GH (the "Preference Payments"). The Preference Payments were made on account of a prior loan extended by GH to FHA. FHA believes that it was insolvent at the time the Preference Payments were made, and that the Preference Payments allowed the Debtor to receive more than it would have received had the Preference Payments not been made, and FHA were liquidated under Chapter 7 of the United States Bankruptcy Code. The Preference Payments were made to the Debtor within the one year preceding the filing of FHA's bankruptcy petition, and given the extent of their interrelationships, GH was, and is, an "insider" of FHA, as that term is defined in 11 U. S.C. § 101(31). As such, the Committee believes that the Preference Payments to GH constitute avoidable preferences under 11 U.S.C. § 547, that GH is therefore indebted to FHA in the amount of $2,216,748.14, and that GH is not entitled to the allowance or payment of any claim in its favor in FHA's bankruptcy proceedings unless and until the amount of the Preference Payments are paid over to FHA. The Committee does not believe GH has any defenses to this claim.

-17-

### 2. Misappropriated Funds

In the course of their prior dealings, payments from patients and insurance companies attributable to goods and services provided by FHA would be delivered to GH, and then directed to FHA's accounts. FHA has reviewed its records and determined that at least $46,593.44 in payments which should have been directed to FHA's accounts, were improperly deposited in GH's accounts. GH has ignored all demands for the return of the funds. These payments are the property of FHA and have been improperly converted by the GH. GH holds these funds, and any similarly misappropriated funds, in trust for FHA's benefit, and FHA reserves the right to take any action necessary to compel the transfer of these funds to FHA. The Committee believes GH disputes these allegations.

### 3. Administrative Expenses

As outlined in the Disclosure Statement the administrative services provided by GH to FHA were substandard and mischarged and misallocated all of which caused damage to FHA.

### B. Claims against other parties

The following Causes of Action are specifically preserved:

(1) Those Causes of Action asserted in Adversary Case Number 4-15-ap-00164 against multiple defendants to avoid and recover fraudulent transfers in connection with the Defendants' respective redemption, or purported redemption, of their membership interests in the Debtor.

(2) Those Causes of Action asserted in Adversary 4-13-ap-00765 against Bank SNB to avoid and recover prepetition transfers. (The Committee notes that the matter has been settled but the settlement has not been approved by the Court).

(3) Those Causes of Action which may exist against Dr. Johns, Peoria Regional Medical Center, LLC ("Peoria"); Buckeye Regional Medical Center, LLC ("Buckeye");

Visionary Health, LLC ("Visionary"); and FHAD Property, LLC ("FHAD") and their respective officers and directors to avoid and recover prepetition transfers all as outlined in Article III of the Disclosure Statement.

(4) Former management of FHA and the management and officers and directors of Gilbert Hospital related to the mismanagement of FHA all as outlined in Article III of the Disclosure Statement.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtor, the Reorganized Debtor, or the Plan Trust may have or choose to assert under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, and including without limitation any crossclaim, counterclaim, and/or claim for setoff that seeks affirmative relief against the Debtor, the Reorganized Debtor, the Plan Trust or its officers, directors or representatives. All Causes of Action shall vest on the Effective Date in the Creditor Trust

**6.3.  Exculpation and Release**

Pursuant to the Plan, the Debtor, the Committee, the Reorganized Debtor, and the PCO and all of their  respective present and former partners, members, officers, directors, employees, advisors, attorneys and agents (collectively, the "Released Parties")  shall not have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or Affiliates, or any of their successors or assigns for any act or omission in connection with, relating to or arising out of this Chapter 11 Case, any settlement related to this Chapter 11 Case, the negotiation and execution of a proposed Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan, issuance and distribution of any securities issued or to be issued pursuant to the Plan, or the Property to be distributed under

the Plan, except only to the extent that liability is based on willful misconduct. The Released Parties shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan, or in the context of the Chapter 11 Case.

No other releases of third parties are intended by this Plan.

**6.4.    Discharge and Injunction**

Except as otherwise specifically provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made under the Plan shall discharge all existing debts and Claims, and shall terminate all interests of any kind, nature, or description whatsoever against or in the Reorganized Debtor or Creditor Trust or any of its assets or properties to the fullest extent permitted by Section 1141 of the Bankruptcy Code. Except as otherwise specifically provided in the Plan or in the Confirmation Order, upon the Effective Date, all existing Claims against the Debtor and interests in the Debtor shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Interests (and all representatives, trustees, or agents on behalf of each holder) shall be precluded and enjoined from asserting against the Debtor, the Reorganized Debtor, the Creditor Trust, the Plan Trustee, their respective successors or assignees, or any of their assets or properties, any other or further Claim or Interest based on any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date, whether or not the holder has filed a Proof of Claim and whether or not the facts or legal bases therefor were known or existed before the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims against, liabilities of, and Interests in the Debtor, subject to the occurrence of the Effective Date.

Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise provided in the Plan, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any Affiliate of the

holder shall be deemed to have forever waived, released, and discharged the Debtor and the Reorganized Debtor, to the fullest extent permitted by Section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose before the Effective Date. Upon the Effective Date, all those Persons shall be forever precluded and enjoined, pursuant to Section 524 of the Bankruptcy Code, from prosecuting or asserting any discharged Claim against or terminated Interest in the Debtor.

Except as otherwise expressly provided in the Plan, all persons or entities who have held, hold, or may hold Claims or Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, representatives, and Affiliates, are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, the Creditor Trust or Plan Trustee or property of the Debtor; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtor, the Reorganized Debtor, the Creditor Trust or Plan Trustee, or against the property or interests in property of the Debtor; or (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor the Reorganized Debtor, the Creditor Trust or Plan Trustee, or against the property or interests in property of the Debtor, with respect to any such Claim or Interest. This injunction shall extend to any successors or assignees of the Debtor, Debtor, the Reorganized Debtor, the Creditor Trust or Plan Trustee, and their respective properties and interests in properties.

**6.5.** **Setoff and Recoupment**

The Creditor Trust may, but shall not be required to, setoff or recoup against any Claim and any distribution to be made on account of that Claim, any and all claims, rights,

and Causes of Action of any nature that the Creditor Trust may have against the holder of that Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim under the Plan shall constitute a waiver, abandonment, or release by the Creditor Trust of any such claims, rights, and Causes of Action that the Creditor Trust may have against the holder of the Claim. To the extent the Creditor Trust fails to setoff or recoup against a holder and seek to collect a claim from that holder after a distribution to the holder pursuant to the Plan, the Creditor Trust shall be entitled to full recovery on its claim against that holder of a Claim.

### 6.6. <u>Compromise and Settlement of Claims and Controversies</u>

Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise of all Claims, Causes of Action, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of that Allowed Claim. In each case, the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all those Claims or controversies and the Bankruptcy Court's finding that the compromise or settlement is in the best interests of the Debtor, its Estate, and the holders of those Claims and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice, action, order, or approval of the Bankruptcy Court, the Creditor Trust may compromise and settle Claims and Causes of Action, in its sole and absolute discretion.

# ARTICLE VII
## MISCELLANEOUS PROVISIONS

**7.1.** **Binding Effect of Plan**

The provisions of this Plan shall bind the Debtor, the Creditors, and any Interest Holders, and shall bind any Person asserting a Claim against the Debtor or an Interest in the Debtor, whether or not the Claim or Interest arose before or after the Petition Date or the Effective Date, whether or not the Claim or Interest is impaired, and whether or not the Person has accepted the Plan.

**7.2.** **Appeals**

In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof to implement the Plan.

**7.3.** **Modification and Amendment of Exhibits, Schedules, and Appendices**

The Committee may modify or amend the terms of any document or agreement that is an Exhibit, schedule or appendix to the Plan without the need for re-solicitation of votes with respect to the Plan; provided, however, that the modification or amendment does not materially adversely affect the rights of any Person provided in the Plan and, provided further, however, that prior notice of the modification or amendment shall be served in accordance with the Bankruptcy rules or any order of the Bankruptcy Court.

**7.4.** **Governing Law**

Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Arizona.

**7.5.** **Headings**

    The headings of the Articles, Sections and subsections of the Plan are inserted for convenience only and shall not limit the interpretation of the Plan.

**7.6.** **Amendment and Modification of the Plan**

    The Committee may propose amendments to or modifications of the Plan at any time prior to confirmation of the Plan without the leave of the Bankruptcy Court or as permitted by the Bankruptcy Code or Bankruptcy Rules.  After confirmation of the Plan, the Reorganized Debtor may amend or modify the Plan, with the approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of Creditors or other parties in interest as set forth herein, to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, in a manner as may be necessary to carry out the purposes and intent of the Plan.

**7.7.** **Withdrawal of Plan**

    The Plan may be withdrawn or revoked prior to the entry of the Confirmation Order at the sole discretion of the Committee.

**7.8.** **Quarterly Fees**

    The quarterly fees required by 28 U.S.C. § 1930(a)(6) will be paid by the Reorganized Debtor and reports will be filed with, the Office of the United States Trustee by the Reorganized Debtor until application is made for entry of a final decree.  Application for a final decree can be made when the Plan has been fully administered, which for purposes of the Plan shall mean when the Plan has been substantially consummated, as that term is defined in Section 1101(2) of the Bankruptcy Code.

    DATED:  May 18, 2015.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: /s/ Carolyn J. Johnsen _____